## QUINN'S ADMINISTRATOR, RESPONDENT, *v.* QUINN, APPELLANT.

[No. 1,061.]

[Submitted March 7, 1899.   Decided April 10, 1899.]

*Abatement and Revival—Death of Plaintiff—Special Administrator— Partnership Realty— Trial by Referee— Error Cured.*

1. Where the appointment of an administrator is delayed through a contest over the right to letters, the special administrator may be substituted in pending actions brought by decedent, under Code of Civil Procedure, Secs. 2500, 2504, authorizing a special administrator to collect and preserve the estate for the administrator to be regularly appointed, and for such purpose to commence and maintain suits and other legal proceedings as an administrator could do.

2. Lands purchased with partnership funds for partnership purposes are firm property, though the title be taken in the name of one of the partners, or was conveyed to the partners as tenants in common.

3. Error of a referee in refusing to permit a witness to be asked whether he is unfriendly to the adverse party is cured by afterwards permitting him to testify to facts which show him to be unfriendly.

4. A referee's refusal to rule on objections to a question is harmless, where the answer thereto is competent.

5. A referee should rule upon objections offered to testimony as they are made, in order to give the objecting party the benefit of exceptions.

*Appeal from District Court, Silver Bow County, W. O. Speer, Judge.*

ACTION by Charles Quinn against Bernard Quinn for an accounting. From a decree directing an accounting to be had, and from an order denying a new trial, defendant appeals. Affirmed.

Statement of the case by the Justice delivering the opinion.

Charles Quinn, original plaintiff and respondent, sued Bernard Quinn, his brother, defendant and appellant, for a dissolution of a partnership alleged to have existed between the brothers since 1864, and to set aside and cancel a certain deed that had been executed and delivered by Charles Quinn to his brother, Bernard, conveying certain real estate in the city of Butte, and to have the said realty adjudged to be a part of the partnership assets.

It is alleged by plaintiff that the agreement of partnership between himself and Bernard was a verbal one, and made for the purpose of conducting a freighting, mining, stock-raising and other business; that the partnership began in September, 1864, at Alder Gulch, and continued without interruption until September, 1893, during which years, it appears, the brothers acquired live stock, ranches and real estate. Charles alleges that on October 11, 1887, he purchased from one Davis, for a consideration of $6,000, lots 4 and 5 in block 45 of the Butte townsite, and on June 11, 1888, purchased from R. P. Thoroughman et al., for $1,000, lot 19 in block 51 of the Butte townsite, and that he purchased on September 4, 1888, from one Farlin, lot 5 of block 51 of the Butte townsite for $400, and on September 14, 1888, lot 4 of block 51 from the same person for $2,000. He also alleges that on September 2, 1893, he made and delivered a deed to Bernard for all his title and interest to lots 4, 5 and 19, in block 51, and to lots 4 and 5, in block 45, but he avers that the deed was executed and delivered to Bernard without any consideration, and that the consideration of $10,000 named in said deed was never paid by defendant to plaintiff, and that the real estate above described is owned and possessed by the partnership. He then pleads that the co-partnership doing business as Quinn Bros.

is indebted to W. A. Clark & Bro., bankers, in the sum of about $7,000; that the co-partnership owns three certain promissory notes executed by Charles Langlois and wife to Quinn Bros., dated August 24, 1893, the same being, respectively, for the sums of $400, and $400, and $3,054.30; that the partnership owns a horse and buggy, two cutters and some harness, of the value of $1,500, in possession of defendant; and that Bernard collects the rents from the property, and refuses to divide or to account. Charles alleges that he is ready and willing to account for any promissory notes in his possession, and moneys paid thereon; that there can be no equitable division of the assets without great loss; and that, it being impossible for the brothers to conduct business together, the property should be divided by a sale.

Bernard, the defendant, answered, denying any partnership. He admits the purchase of lots 4 and 5, in block 45, and of lot 19, in block 51, but denies that he and plaintiff are joint owners, or that the plaintiff has any interest therein. He denies the purchase from Farlin of lot 5, in block 51, and denies plaintiff's right or title to said lots, or that they purchased lot 4, in block 51, but avers that he (Bernard) purchased said lot with his own money, as his own separate property, and that thereafter, by agreement, the brothers erected a building thereon jointly. Bernard admits that they are joint owners of a band of cattle in Fergus county. He also admits the execution and delivery of the deed of September 2, 1893, for certain real estate, but says that although he did not pay the consideration of $10,000, named in said deed, to plaintiff, yet it was paid for his use and benefit, for the purpose of liquidating an indebtedness then existing from Charles to the banking house of W. A. Clark & Bro. He denies that the property mentioned in said deed is a part of the partnership assets, or that the partnership is indebted to W. A. Clark & Bro. in the sum of $6,500, or any sum, but avers that the plaintiff was indebted to Clark & Bro. in the sum of $6,500, and that Clark & Bro. were about to commence suit against Charles for said sum; that the plaintiff then made a proposition to defendant

that if he would assume the said indebtedness, and sign a joint obligation with the plaintiff to Clark & Bro., he (plaintiff) would convey to defendant all his right, title and interest to the real estate mentioned in the plaintiff's complaint, and included in the deed executed and delivered by plaintiff to defendant on Sept. 2, 1893. He then sets up that, relying upon the said agreement, and in consideration of the transfer of the said interest in the said property by plaintiff to him, he (defendant) made to W. A. Clark & Bro. on October 6, 1893, a promissory note for $6,810.39, with interest; that, after the making of the note, plaintiff Charles commenced suit against defendant to set aside and cancel the deed, and thereby prevented defendant from raising or borrowing the money on the said property with which to pay the note; that on June 27, 1894, Clark & Bro. commenced a suit upon the note, and attached all of the property described in the deed, and recovered judgment in November, 1894, for $7,348.48, which defendant is obliged to pay,—plaintiff never having contributed anything towards the payment of the same. He then denies that plaintiff and defendant owned the Langlois notes referred to in the complaint, or that they owned the harness, etc., as alleged. He admits the collection of the rents; denies any demand by plaintiff therefor, or for an accounting, and says that the only joint interest of himself and plaintiff is the band of cattle in Fergus county. He sets up that he cannot read or write, and that he never was in a position to deprive plaintiff of any money or property, owing to the fact that he was obliged to take plaintiff's statements as to the correctness of all computations and accounts in their joint undertakings.

Plaintiff filed a replication denying the matters set out in defendant's answer, and averring that they had received certain amounts on the Langlois notes, and denying that plaintiff is indebted to defendant in any sum.

The matter was referred to John Lindsay, Esq., as referee to take testimony, and report the same, with his findings, to the court. The referee, after hearing testimony, made findings substantially as follows:

(1)   That in September, 1864, at Alder Gulch, Mont., plaintiff and defendant formed a co-partnership for the purpose of dealing and trading in various property, real and personal, and that the said co-partnership has never been dissolved.

(2)   That thereafter, by their joint labors and funds, plaintiff and defendant acquired interests in common in personal and real property, in which they were jointly and equally interested.

(3)   That the original contributions were dissipated, and did not exist at the time of the acquisition of certain real property situate in Madison county, Montana.

(4)   That the products of the real property and certain live stock were invested in cattle in Fergus county, and in real estate in Silver Bow county, Montana, and that the present assets of the partnership were purchased with the proceeds of the sale of partnership property.

(5)   That the assets at the time of the commencement of this suit consisted of lots 4, 5 and 19, in block 51, lots 4 and 5, in block 45, of the Butte townsite, and of certain personal property, to wit:   A band of cattle in Fergus county; also, a horse, buggy, cutter and some harness.

(6)   That the real estate and the improvements were paid for from the proceeds of the partnership property, and that the personal property was also acquired in the same manner.

(7)   That lot No. 4 in block 51 in Butte was purchased in the name of Bernard Quinn with the proceeds of the partnership property, and that the premises were and are partnership property.

(8)   That when this suit was commenced the co-partnership owed W. A. Clark & Bro., bankers, the sum of $6,269.39, which said indebtedness was put in judgment on November 16, 1894, and amounted to $7,348.48, and was and is the only debt of the co-partnership; and that $5,710 has since been paid thereon out of the proceeds of said partnership, and that there is now owing to W. A. Clark & Bro. by the said co-partnership the sum of $1,638.48 and interest.

(9)    That the judgment so obtained was an indebtedness of the co-partnership, excepting the sum of $300, the amount of a note executed by Charles Quinn and one H. Larouch in 1890, and excepting the sum of $75, the amount of a note executed by M. & H. Larouch, dated in 1890, and excepting the sum of $150, the amount of a note executed by H. Larouch and the plaintiff, dated in 1890, and excepting the sum of $529.30, the amount of a note executed by plaintiff and H. Larouch in 1890, all of which notes should be charged to the account of Charles Quinn individually.

(10)    That the four promissory notes made by Langlois and wife to Charles Quinn & Bro. on August 24, 1893, aggregating the sum of $4,354.30, were the property of the partnership.

(11)    That the sum of $1,006 was collected by plaintiff upon the Langlois notes, and applied to his own use, and he should be charged therewith, and that the balance due was collected, in part by Bernard Quinn, and paid by him upon the indebtedness to W. A. Clark & Bro., and by the sheriff of Silver Bow county, and paid by said sheriff to W. A. Clark & Bro. upon said indebtedness.

(12)    That, since the institution of this action, defendant, Bernard, has had possession of the property of the firm, and has collected rents thereof, but that all of such rents have been applied towards improvements and repairs and taxes.

(13)    That the conveyance of September 2, 1893, by the plaintiff to defendant of all his interest and title to certain real estate for the consideration named, $10,000, was not intended by the parties thereto to be a conveyance of the beneficial interest in said property, but "that such conveyance was merely colorable, and did not in fact transfer the equitable or beneficial title, or any part thereof, of Charles Quinn to Bernard Quinn, and that whatever title Bernard may have taken, if any, by such deed, was held by him in trust for the benefit of the co-partnership, and that such property so ostensibly conveyed was at that time, and is now, a part and parcel of the co-partnership property of the firm, so far as the right, title

and interest in and to the same of Bernard Quinn is concerned, subject to the co-partnership lien of Bernard Quinn upon the same for a proportionate part of the sum of money in which Charles Quinn is indebted to the co-partnership.''

(14)    That in December, 1894, defendant conveyed to one Patrick M. O'Donnell a deed purporting to convey certain real estate, but that the same was partnership property, and that, inasmuch as said O'Donnell had notice of the pendency of this action, he took nothing as against the plaintiff.

(15)    That plaintiff owes the co-partnership $2,060.30, made up of the $1,006 collected by him from Langlois, and $1,054.30, the amount of co-partnership funds expended by him in the payment of the Larouch notes.

(16)    That Bernard Quinn is not indebted to the partnership in any amount.

(17)    That the brothers can no longer advantageously or beneficially conduct a co-partnership business.

(18)    That the real and personal property is not susceptible of division and partition in kind, and that a sale and distribution are proper.

As conclusions of law, the referee found that:

(1)    That the plaintiff is entitled to an accounting; that the assets should be sold; that each should receive his share of the proceeds of the sale of the partnership property in proportion to his interest therein, and that thereafter an absolute dissolution should be had.

(2)    That the property described in the findings is partnership property, purchased with partnership funds; and to which the plaintiff and defendant, as between themselves, are entitled to share and share alike, and, upon a sale, to an equal division of the proceeds.

(3)    That the debt to W. A. Clark & Bro. was a partnership indebtedness, and that that part of said debt heretofore paid was payable out of the partnership funds, and that the residue thereof should be paid out of the proceeds of the sale of the assets of the partnership.

(4)    That the sale of the real property of the partnership

by Bernard Quinn to O'Donnell conveyed no interest of Charles Quinn therein as a co-partner with Bernard.

A decree of dissolution was thereafter entered.  The property was ordered sold for cash, and that one-half of the net proceeds of the sale or sales of the real and personal property, and an additional sum of $1,030.15, be paid to Bernard Quinn. It was ordered that there be paid to Charles Quinn one-half of the net proceeds of the sales of the real and personal property, less the sum of $1,030.15; that sum being the amount of the debt of Charles Quinn to the partnership.

The court adopted the report of the referee, and entered a judgment and decree in accordance with the findings.

Thereafter the defendant made a motion for a new trial, and to vacate the findings and the report of the referee, and the judgment rendered and entered.  The court denied this motion, whereupon defendant appealed from the order denying the motion for a new trial, and from the judgment.

After the appeal to this Court, plaintiff, Charles Quinn, died.  Motion has been made to have Philip B. C. Goodwin, as special administrator, substituted as party plaintiff.  Defendant resists this.

*McHatton & Cotter,* for Appellant.

We submit that, under the plaintiff's own statement, the finding is not supported by the evidence, and it is conclusively shown, both by plaintiff and defendant, that no partnership was ever entered into by and between them, and that the only relations existing were that they were owners, as tenants in common, of real and personal property.  A partnership *inter se* results from the intention of the parties.  It is shown, in this case, that no partnership, or partnership agreement, was ever entered into; that they never undertook any joint enterprise, excepting the ownership of property in common, and never engaged in merchandising or other business.  The intention of the parties must control.  The relation of partners is formed by contract or by the actions of the parties which amount to a contract.  (*Parchen* v. *Anderson,* 5 Mont. 438,

446; 1 Collyer on Part., 7, note 9.)   The appellant submits, in this case, that there has been no trial, for the reason that he was entitled to a ruling upon all of the objections, in order that he might save an exception.   The referee, acting under the instructions of the court, refused to make the rulings, and thereupon, and upon the testimony introduced over such objection, he based his findings and conclusions of law, upon which the decree was entered herein, no ruling ever having been made upon the objections.   A trial before a referee must be conducted in the same manner as a trial before the court, and exceptions must be taken to his rulings during the progress of the trial.   (Code of Civil Procedure, Sec. 1135; *Lyson* v. *Wills*, 2 Cal. 130; *Goodrich* v. *Mayor*, 5 Cal. 431; *Phelps* v. *Peabody*, 7 Cal. 53; 20 Am. and Eng. Ency. Law, pp. 691, 692.)   The referee is required to adhere to the rules of evidence.   (*Delariva* v. *Berrzasa*, 2 Cal. 196.)   He can exercise all the powers of the court in relation to the trial. (*Plant* v. *Fleming*, 20 Cal. 93.)   He should, before closing the trial, rule on all objections, to give an objecting party the benefit of an exception.   (*Berrian* v. *Sanford*, 1 Hun. 627.)

The Supreme Court of New York, in passing upon a trial conducted in this manner, stated that refusing to rule upon an objection made is a hazardous mode of trial.   (*Sharp* v. *Freeman*, 45 N. Y. 802.)   In any view of the case, we submit, there was a sufficient consideration for the deed.   Where a deed is taken in good faith, the amount of the consideration paid is immaterial.   (2 Devlin on Deeds, Sec. 814; *Carey* v. *White*, 52 N. Y. 138.)   A promise to pay, even though it is not performed, is a sufficient consideration for the deed.   (2 Devlin on Deeds, Sec. 809; Bishop on Contracts, Sec. 1304; *Gray* v. *Lake*, 48 Ia. 505; *Lake* v. *Gray*, 35 Ia. 459; *Price* v. *Sturgis*, 44 Cal. 591; *Byers* v. *Lock*, 93 Cal. 496, 29 Pac. 119; *M' Crea* v. *Purmort*, 16 Wend. (N. Y.) 460, 472.)   Anything detrimental to the promisor or beneficial to the promisee is a good consideration.   (*Story* v. *Black*, 5 Mont. 26, 50.) Inadequacy of price must be extreme to call for the interposition of equity.   (2 Pomeroy's Eq. Juris. Secs. 925, 927, 928.)

A false statement of consideration does not necessarily vitiate the deed.   (2 Pomeroy's Eq. Juris. Sec. 928, note, p. 433.) It may always be shown that the real consideration was a different amount than that expressed in the deed.   (*Bowen* v. *Bell*, 20 Johns. (N. Y.) 338; *Byers* v. *Lock, supra.*) The consideration clause of a deed is always open to explanation, and it may be shown, by parol, that the consideration was of an entirely different character than that expressed in the deed. (*M' Crea* v. *Purmort, supra; Byers* v. *Lock, supra.*) While the deed expresses a consideration, and the plaintiff admits that he sold the property under the agreement that he was to get ten thousand dollars, we submit that is sufficient, for the defendant shows he assumed his indebtedness in the bank, in which he obligated himself to the extent of about seventy-three hundred dollars, and was obliged to pay the same.   In any view of the case, we submit, under the above authorities, that the deed was supported by a sufficient consideration. The verbal agreement of appellant to assume the Clark indebtedness or pay plaintiff ten thousand dollars as a consideration for the deed was valid and binding, and could be enforced by the plaintiff.   (Civil Code, Secs. 2183, 2184, 2185; Compiled Statutes 1887, Sec. 219, p. 652; *Price* v. *Sturgis, supra; Byers* v. *Lock, supra; Thomas* v. *Dickinson*, 12 N. Y. 364; *Darling* v. *Butler*, 10 L. R. A. 469, 472; *Shephard* v. *Little*, 14 Johns. (N. Y.) 210; *Ide* v. *Leiser*, 10 Mont. 5.) The evidence further shows that by reason of the execution and delivery of the deed, the defendant was induced to sign the Clark note.   There is no offer on the part of the plaintiff in this case to relieve the defendant from that liability and obligation, and we therefore submit that he is not in a position to have the deed in question canceled.   It is a familiar principle that "He who seeks equity must do equity."   (1 Pomeroy's Eq. Juris. Secs. 385-388; *Casey* v. *Wright*, 14 Mont. 317.) The true rule would seem to be that only in cases of fraud should the deed be set aside without the return of the consideration, but in cases where the deed was taken in good faith, the grantee should be reimbursed.   (1 Devlin on Deeds, Sec. 76; citing,

*Eaton* v. *Eaton,* 8 Vroom. (N. J.) 108; note, *Jackson* v. *King,* 15 Am. Dec. 367.) Facts showing undue influence must be alleged. (1 Devlin on Deeds, Secs. 81, 82, 83, 84; *Allore* v. *Jewell,* 94 U. S. 506, L. Ed. 260; *Jones* v. *Gorham,* 10 L. R. A. 223; *Jackson* v. *Rowell,* 4 L. R. A. 637, note; *Bender* v. *Bender,* 14 Ore. 353, 12 Pac. 713.) Facts must be alleged showing fraud. (*Budd* v. *Power,* 8 Mont. 380.) Inadequacy of consideration, even if it were shown, is not sufficient evidence of fraud or undue influence. (*Sturtevant* v. *Sturtevant,* 116 Ill., 340; 2 Pomeroy's Eq. Juris., Sec. 928.) The mere fact that plaintiff and defendant were brothers is not a sufficient reason, without an additional showing, for setting aside the deed. (*Jenkins et al.* v. *Pye et al.,* 37 U. S. 41, L. Ed. 1070.) Appellant submits, upon the foregoing authorities, that the judgment and decree entered herein and order overruling his motion for a new trial herein should be reversed, and that an order should be entered herein directing a judgment in his favor for the property in controversy, as included in the deed of September 2, 1893.

*Charles O'Donnell,* for Respondent.

We admit on the part of the plaintiff that the testimony does not show that there ever was any written articles of co-partnership made between the plaintiff and the defendant, but the testimony does show that they went into business together as early as 1864, and engaged in several kinds of business, lived together, partook in the profits of the enterprises and equally shared in the losses. There is no absolute necessity for a partnership contract or an agreement in writing to constitute a co-partnership. If Charles Quinn and Bernard Quinn were not co-partners, what were they? We are unable to answer the question. Two persons jointly interested in a mining adventure are partners; and this whether they so agree or not. (*Synider* v. *Burnham,* 77 Mo. 52.) The joint purchase of a threshing machine by two persons, who give their notes for the price, under an agreement to work it together, each furnishing one-half the labor, and to divide the profits

and losses equally, makes them partners. (*Aultman* v. *Fuller*, 53 Iowa, 60.) It is sufficient if they are to share in the profits and in the losses so far as they affect the capital advanced. Nor is it necessary that the partners should be proportionate joint owners of the capital. It is enough that they are jointly interested in the profits and losses. (*Brigham* v. *Dana*, 29 Vt. 1.) Joint purchasers of land intended to be sold for joint profit are partners. (*Hulet* v. *Fairbanks*, 40 Ohio St. 233; *Richards* v. *Grinnell*, 63 Iowa, 44, 50 Am. Rep. 727; *Canada* v. *Barksdale*, 76 Va. 890.) A joint undertaking and community of profit and loss in the results of the business will constitute a partnership, even when each partner retains the exclusive ownership of the separate property contributed by him to the use of the firm. (*McCrary* v. *Slaughter*, 58 Ala. 230.) Persons engaged in any trade, business or adventure, upon the terms of sharing the profits and losses arising therefrom, are partners in that trade, business or adventure. An agreement to share the net profits necessarily implies a sharing of the losses. (*Wilcox* v. *Dodge*, 12 Ill. App. 517; *Howe* v. *Howe*, 99 Mass. 71; *Meserve* v. *Andrews*, 104 Mass. 360; *Vassar* v. *Camp*, 14 Barb. N. Y. 341.) Participation in the profits of a business is strong presumptive evidence of a partnership in it. (*Shropshire* v. *Shepherd*, 3 Ala. 733; *Hanna* v. *Flint*, 14 Cal. 73; *Loomis* v. *Marshal*, 12 Conn. 69; *Pond* v. *Cummins*, 50 Conn. 372; *Barton* v. *Goodspeed*, 69 Ill. 237; *Holbrooke* v. *Oberne*, 56 Iowa, 324; *Shepherd* v. *Pratt*, 16 Kan. 209; *Turner* v. *Bissill*, 14 Pick. 192.) Partnership must be proved like any other fact, and cannot be established by mere surmise or innuendo. (*Hudson* v. *Simon*, 6 Cal. 453.) But it may be implied from circumstances. (*Kellegher* v. *Tisdale*, 23 Ill. 405.) And evidence that the parties are constructively partners supports the allegation. (*Rippey* v. *Evans*, 22 Mo. 157; *Winslow* v. *Cheffelle*, 1 Harp. (S. C.) Ch. 25; *Wilcox* v. *Matthews*, 44 Mich. 192; *Seekell* v. *Fletcher*, 53 Iowa, 330.) A promise made without any consideration—*i. e.* a gratuitous promise—is not binding. The common law rule which refuses re-

lief against ignorance or mistake of law, and which is equally
applicable in courts of law and equity, is not enforced in equity
where such ignorance or mistake is induced by fraud or impu-
tation, or undue influence, or an abuse of confidence springing
out of the peculiar relations existing between the parties.   (5
Rights and Remedies, page 3929; *Hardegrie* v. *Mitchum*, 51
Ala. 151; *Dill* v. *Shahan*, 25 Ala. 694; *Benson* v. *Markoe*,
37 Minn. 30; *State* v. *Paup*, 13 Ark. 129; *Warder* v. *Tucker*,
7 Mass. 449.)

**HUNT, J.**—1.   Counsel for Bernard Quinn objects to the
substitution of the special administrator of Charles Quinn as
plaintiff.    But we are advised on the argument that there is a
delay, on account of some contest in the District Court of Sil-
ver Bow county in granting letters of administration, and that
because of such delay no administrator has yet been appointed.
Under such conditions, we believe a special administrator has
a right to appear in a pending suit, and to represent the inter-
ests of the decedent's estate.   In so doing the special admin-
istrator but exercises the authority given to him by Sections
2500, 2504 of the Code of Civil Procedure, to collect and pre-
serve the estate for the administrator to be regularly ap-
pointed, and, for the purpose of collection and preservation,
to commence and maintain suits and other legal proceedings
as an administrator could do.   Within the duties of collection
and preservation is the prosecution of a suit already com-
menced to obtain an interest in property belonging to the de-
cedent, for upon its determination may depend the collection
of property which represents the bulk of the estate.   Plainly,
therefore, the special administrator is a proper party, and
may be substituted as plaintiff herein.    (*State ex rel. Bartlett*
v. *Second Judicial District Court*, 18 Mont. 481, 46 Pac.
259.)

2.    It is contended that the findings to the effect that by
their joint labors and funds the brothers acquired interests in
common in real and personal property are unsupported by the
evidence.    We shall not recite the testimony, but merely say

that every finding of referee is amply sustained. These brothers joined their interests in an association to carry on business together, and to divide its profits or losses between them. Brotherly affection, mutual confidence, and trust kept them close together as men; and, although they made no express agreement forming a partnership, the transactions and relations of one towards the other in their affairs show that they intended to be partners, and were so in law. (Story on Partnership, Section 7.) For nearly 30 years they plodded along, acquiring and owning everything share and share alike, living together as bachelors, without books of account between them, without division of funds, without suspicion of one another, known to the world as partners, and without a break in the ties of unmeasured confidence which had inseparably bound them from their younger days, and which lasted until just before the close of the life of Charles. Unfortunately then came a disagreement, but it cannot affect the legal relationship that existed between them, or deprive either of his share in the assets of their partnership.

The deed from Charles to Bernard on September 3, 1893, was evidently executed by way of protection to Bernard and taken by Bernard in recognition of Charles' equal rights in the property conveyed thereby. The reason for this transfer was that Charles, being less prudent in the management of business than Bernard, was apt to involve the partnership in obligations for which Bernard did not wish to be responsible without some security. But the realty conveyed was a partnership estate. It had been purchased for partnership purposes, and paid for by partnership funds; and notwithstanding that part of it may have stood in the name of one brother or that it had been conveyed to the brothers as tenants in common, it became, and was treated by the brothers as, partnership property. It must therefore be regarded as partnership real estate, controlled by those principles common to all partnership estates, and which have been announced in the case of *Rockefeller* v. *Dellinger*, 22 Mont. 418, 56 Pac. 822.

After attentively examining the evidence, we approve of

the findings and judgment.   It is seldom that a case is presented showing so much care on the part of a referee.   He has laboriously entered into the accounts of the brothers, and in his elaborate findings has worked out a most just and equitable result, supported in every respect by competent evidence and principles of fairness and right.   The lower court approved of the findings, and we now affirm the judgment thereon.

3.   Several errors are presented as to the referee's rulings upon certain questions occurring on the trial.   In but one instance was there possible error, but that was not of sufficient importance to warrant a reversal of the case.   It arose by the referee's sustaining an objection to a question put to a witness on cross-examination, asking if the witness was not unfriendly to the defendant.   The interrogatory was perfectly competent and it was error to hold otherwise.   Just afterwards, however, the witness was asked if he had not had defendant arrested once for threatening the witness' life since the trouble between the brothers had arisen.   Witness answered this question by saying that he had had him arrested, and about that time had sued defendant for $15,000 damages for slander. This answer, we think, naturally showed an unfriendly feeling on witness' part to defendant, and sufficiently cured the error in excluding the previous question more directly put. Thus, no prejudicial error was committed.

4.   The referee in the course of the trial was instructed by the court not to rule upon any objections offered to testimony. Thereafter he declined to pass upon certain objections interposed by the defendant.   We have looked into these several objections and find that no harm could have been done by the testimony admitted, as it was competent for the purpose of getting at the several sums of money chargeable to the brothers in adjusting their accounts.   It is a better practice, however, for the referee to rule upon objections as they are made, in order to give the objecting party the benefit of exceptions, and we advise that practice in the future; but, as no injury was done by the different course pursued in this in-

stance, we shall not reverse the order denying a motion for a new trial.

The judgment and order appealed from are affirmed.

*Affirmed.*

BRANTLY, C. J., and PIGOTT, J., concur.

