HAYES, Administrator, Respondent, *v.* MOFFATT, Appellant.

(No. 6,333.)

(Submitted October 5, 1928. Decided October 23, 1928.)

[271 Pac. 433.]

*Mr. P. F. Leonard,* for Appellant, submitted an original and a supplemental brief and argued the cause orally.

218

*Mr. George W. Farr* and *Mr. R. B. Hayes,* for Respondent, submitted a brief; *Mr. Farr* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

During her lifetime, Eugene Elizabeth Drake commenced an action in equity against defendant Fred E. Moffatt by the filing of a complaint, wherein she alleged that she was the owner and entitled to the possession of a tract of land near Miles City, in Custer county, from the possession of

which defendant had ousted her and to which he claimed title by virtue of a certain warranty deed of record in that county. The complaint then alleges that the deed in question was made by her but was never delivered to defendant, and that it was the understanding of the parties, and her intention at the time the deed was made, that it should have no force or effect and should not be recorded so long as she should live, but that it was then her intention that the instrument should take effect after her death, but that she thereafter, and before the recording of the deed, repudiated and changed her intention. She prays for the cancellation of the deed, for possession of the premises and such other and further relief as to the court may seem just and equitable.

By answer, the defendant denies the allegations of the complaint, except as admitted, and affirmatively alleges that the deed was delivered to him at the time it was made; he sets up a recital of his version of the history of the transactions between the parties leading up to the making of the deed, and alleges that "in truth and in fact" the premises and all personal property used on or in connection therewith "belong equally to plaintiff and defendant herein or to the survivor in the event of the death of either," as it was acquired and paid for by the joint services and joint funds of the parties hereto with the understanding and oral agreement that all property acquired should be jointly held and used and go to the survivor on the death of either, and that no accounting has ever been had between the parties. He prays for an accounting and that the rights and equities of the parties be determined and declared and that they be adjudged equal owners and jointly entitled to possession with the right of survivorship, and that the defendant be adjudged to have such further rights as to the court may seem just and equitable. The new matter in the answer was put in issue by reply.

Issue being joined, the cause was tried to the court sitting with a jury, and, after each side had introduced testimony, the

court, with the consent of both parties, submitted to the jury three special interrogatories involving the questions as to whether the deed was ever intended to be delivered so as to vest immediate title in defendant; whether the defendant had any interest in the real estate described and, if so, what interest he had therein. The jury answered interrogatories 1 and 2 in the negative and, consequently, no answer to the third question was necessary.

Each side submitted requested findings to the court; the defendant moved the court to reject the findings of the jury, while the plaintiff moved that they be adopted by the court. After due consideration the court adopted the findings of the jury and made further findings of fact and conclusions of law in favor of plaintiff, and thereupon entered judgment in favor of plaintiff declaring the deed null and void and quieting title to the real estate in her. From this judgment the defendant has appealed.

After the appeal was perfected plaintiff died; R. B. Hayes was duly appointed administrator of her estate and has now been substituted as party plaintiff.

Defendant's specifications of error and argument thereon present but the questions as to whether the evidence adduced was sufficient to warrant the findings of fact made and the judgment entered in favor of the plaintiff, and as to whether, under the facts, the defendant was not entitled to some equitable relief.

The undisputed facts are that the plaintiff, a negro woman, twice married prior to the period covered by the testimony pertinent to the questions here to be determined, inherited the land involved in this action from an aunt but in which the husband of the testatrix had a life estate. The husband, Richard W. Kelly, died in July, 1922.

Up to some time in 1918 the place was leased to one Wakefield, and thereafter, up to January 8, 1927, plaintiff and defendant lived upon and jointly labored on the place. On June 2, 1921, as a result of plaintiff's conviction of a viola-

tion of the prohibition laws, the federal authorities filed a tax lien amounting to $1,450 against all of the property of plaintiff. On May 24, 1921, plaintiff executed and delivered to defendant a quitclaim deed to the property in question but this deed was not recorded until June 7, 1922. The title to the property, then, stood of record in defendant's name until March 17, 1925, when a quitclaim deed from defendant to plaintiff was placed of record. This deed was made February 18, 1924. Thereafter plaintiff sold five acres of the land in question to the county of Custer, the transfer being evidenced by deed of date April 1, 1925, which deed was duly recorded.

During all of the time plaintiff and defendant worked the ranch, they lived together thereon as though they were husband and wife. Plaintiff worked beside defendant in the fields, and some time in the spring of 1925, while the two were hitching an old horse and a ''bronc'' to a wagon, plaintiff was knocked to the ground and run over; she suffered severe injuries.

On April 13, 1925, plaintiff and defendant went together to the office of W. W. Palmer, an attorney practicing at Miles City, and there the warranty deed to the premises, then standing of record in plaintiff's name, was drawn by Palmer and acknowledged by plaintiff before L. A. Auld, a notary public. This deed was taken to the ranch and placed in a tin can with other papers, in which money was also deposited from time to time, the can being always concealed in a box buried in the chicken-house, which box had originally been sunk by defendant as a hiding place for wine. Plaintiff and defendant were the only persons having knowledge of the hiding place.

On January 7, 1927, plaintiff had a birthday party and she and defendant, with others, after drinking wine, quarreled, plaintiff sustaining a bruised eye and other injuries. Defendant left the place in an automobile and the next day placed the deed of April 13, 1925, on record. Plaintiff found

that the depository can had disappeared and was later advised that the deed had been recorded and thereupon brought this action.

Plaintiff's version of the history of her relations with defendant is that in 1918 the two went to the ranch for the purpose of living together and jointly working the place, she doing a man's work, under an oral agreement that the ranch should go to him on her death. Defendant testified, however, that for the first three years he was working the ranch under an agreement with Kelly that they would divide the returns therefrom, and at the end of that period, there being no returns by reason of the use of the entire amount received in improvement of the place, he declared his intention to leave; whereupon plaintiff agreed to convey, and did convey, the place to him, subject to the debts against it, including the federal tax of $1,450, theretofore levied, in consideration for the work he had done on the ranch.

Plaintiff's testimony as to the giving of the first deed was that it was done on the advice of her counsel in the criminal proceeding against her in order to forestall any federal lien against the property, and under agreement that defendant would return the title to her at any time she requested him to do so; she contended that this agreement was complied with when, in February, 1924, defendant reconveyed the property to her at her request. As to this reconveyance, defendant claims it was given only because he had been ordered out of the county by a body of men he thought were representing the Ku Klux Klan, and was only to be effective in case he disappeared, and that it was later placed of record only because plaintiff wanted the satisfaction of making the deed to the county for the five acres sold, and that the deed of April 13, 1925, was a proper reconveyance to him of his own property.

As to this last deed, which forms the basis of this action, plaintiff asserts that it was made only as a protection to defendant in case of her death, action being then taken be-

cause of her late escape from accidental death; that the purpose was discussed between them and with Attorney Palmer, and that, when acknowledged, the deed was handed by the notary to Palmer who in turn handed it to plaintiff, and that it was never delivered to defendant, nor was it out of plaintiff's possession until wrongfully taken by defendant. In this she is corroborated, to some extent, by Palmer, whose recollection of what took place was not entirely clear. There were other unimportant discrepancies in the testimony of these two.

Plaintiff testified that on January 7, 1927, on the occasion of the birthday party, defendant choked her and blacked her eye. His version is that he did not assault her but that, while attempting to assault a third party, plaintiff fell and struck her eye against an obstacle.

From the foregoing it will be seen that there was a decided conflict in the evidence and, on the cold record without the advantage of seeing and hearing the witnesses on the stand, it would be impossible to say which party was telling the truth. The jury and the court believed that the truth was with the plaintiff and found the facts in accordance with her narrative.

1. It is too well settled in this jurisdiction to require the citation of authorities, that the burden rests upon the appellant challenging the sufficiency of the evidence, to show that it clearly and strongly preponderates against the court's findings in order to secure a reversal, and that where the evidence is conflicting and there is substantial evidence to support the findings, they will not be disturbed on appeal. The findings made will, therefore, stand.

2. Was there, then, a delivery of the deed under the facts as found by the court?

Delivery is essential to the validity of any deed, and what constitutes delivery is a mixed question of law and fact; so that the conclusion of the trial court is final, unless the facts found do not establish a delivery as a matter of law.

There is no universal test applicable to all cases whereby the sufficiency of delivery may be established (8 R. C. L. 976); there may be a legal delivery without manual delivery, and there may be no delivery although the instrument is placed in the hands of, the grantee. The intention of the parties is the essence of delivery and. is the crucial test where constructive delivery is relied upon. (8 R. C. L. 978; 18 C. J. 202; *Hotaling* v. *Hotaling*, 193 Cal. 368, 224 Pac. 455; *Renahan* v. *McAvoy*, 116 Md. 356, 38 L. R. A. (n. s.) 941 and note, 81 Atl. 586; *Bremyer* v. *Swedish Ev. Church etc. Assn.*, 86 Kan. 644, 122 Pac. 104; *Plymale* v. *Keene*, 76 Mont. 403, 247 Pac. 554; *Martin* v. *Flaharty*, 13 Mont. 96, 40 Am. St. Rep. 415, 19 L. R. A. 242, 32 Pac. 287.)

As the court found, on ample evidence, that the plaintiff did not intend or desire that "the deed" should take effect or be delivered to the defendant, "unless plaintiff should die," and that the instrument "was retained by the plaintiff in her possession and was not delivered to or intended to be delivered to the defendant," and the evidence warrants an implied finding that this intention or lack of intention was known to and concurred in by the defendant at all times, the evidence warrants the legal conclusion, made therefrom, that the deed was never delivered to defendant and is, therefore, without force or effect.

3. Counsel for defendant contends that as defendant had ▮▮▮▮ access to the depository can and kept certain of his papers therein, plaintiff was not in the sole possession of the deed, but whether this is so or not is immaterial. The interests of a grantor and a grantee are diametrically opposite; both cannot, consistently with its objects, have control of a deed at the same time, and until the grantor parts with all control over it, that of the grantee does not attach (*Provart* v. *Harris*, 150 Ill. 40, 36 N. E. 958); and when, as found by the court, the defendant took the deed from its receptacle and had it recorded, it not having been delivered to him, his action was wrongful, even though he had access to the recep-

tacle, and the recordation of the instrument was without effect.

Even though the deed was handed to defendant by the notary public and by him placed in the depository can, as he contends, if the intention of the parties was that the deed was not to be effective and not to be recorded until after plaintiff's death, and plaintiff had access to the can and to the deed at all times up to its removal by defendant without her knowledge or consent, there was no delivery, and the deed was no more effective than it would have been without such manual tradition (*Hotaling* v. *Hotaling,* above).

4. Counsel for defendant insists that it is intolerable to deny the defendant all rights and equities in this action, although he presents no clear-cut claim on behalf of his client; he suggests "three possible theories" on which this court might make some award to defendant and thus do equity: (a) That plaintiff conveyed the property to defendant and retained a life estate therein; (b) that the title to the property, income and equipment, whether in the name of plaintiff or defendant, was acquired by them and belonged to them in common and was to pass to the survivor; (c) that defendant is, in equity, entitled to the reasonable value of his services during the long period he was working the ranch and to contributions made to plaintiff, and that, as she seeks equity, she must do equity.

Counsel urges that "regardless of how it is classified or designated, it is evident that the parties had some legal or equitable status which continued for nearly ten years." In his answer he alleges that the "relations were fiduciary and confidential." Whatever the "equitable status" of the parties, it was hardly what is usually termed a fiduciary and confidential relationship; their relations were illicit and a stench in the nostrils of the community in which they lived. The most that could be said of their legal status is that they must have occupied the relation of master and servant; we are not here called upon to say whether or not they occupied

such relations. The plaintiff was the owner of a valuable piece of land which the defendant was willing to work with her as a husband would operate the farm of his wife for their joint maintenance and support and in consideration of the questionable privilege of living with her and the oral promise that the property would go to him in some manner, on her death.

(a) As to the transaction constituting a transfer of the ▮ property with a life estate reconveyed to the plaintiff, it must be remembered that a life estate in real property can only be created by deed or will (21 C. J. 940), which rule is written into our statute of frauds (sec. 7593, Rev. Codes 1921).

In order to maintain the position that title passed to defendant, and plaintiff retained a life estate in the property, defendant must rely upon the deed heretofore considered, and this, in effect, is what he does; but even though the deed was found to have been delivered, it would not have had this effect. It was not so drawn. It would have passed immediate title to defendant, and plaintiff residing thereon, would have thenceforth been but a tenant by sufferance. If the intention of the parties was as claimed under this contention, the deed, if delivered, would have to be reformed, as it did not carry out the intention of the parties. Had plaintiff or defendant sought in this action to have the deed so reformed and shown to the court that a reformation was proper, the manner in which the deed was handled might be held to constitute a delivery of the deed (*Dolph* v. *Wortman*, 191 Iowa, 1364, 183 N. W. 814); but under the facts found on the pleadings as framed and the testimony given, no transfer of the property, with life estate back, could have been decreed in this action.

(b) What is said in the last paragraph applies equally to the theory advanced that we might hold that there was a joint tenancy, with the right of survivorship; the deed is of no avail to defendant and, the promise standing alone, is

within the statute of frauds and unenforceable. (20 Cyc. 235.)

Defendant's counsel asserts that it ought to be held that the association together of these two parties constituted, in law, a partnership agreement, citing *Quinn's Admr.* v. *Quinn*, 22 Mont. 403, 56 Pac. 824, in support of the assertion; but the circumstances here differ from those shown in the *Quinn Case,* as here the real estate in question was owned from the beginning by the plaintiff and was not "acquired" by the use of funds earned by the parties acting jointly.

(c) Whether the defendant is, under the circumstances shown, entitled to wages for the time he worked the ranch is beside the questions involved in this action. The parties had no agreement as to wages; defendant's services were to be compensated for by title to the property on the death of plaintiff; how the transfer was to be effected was not agreed upon, except that they seem to have believed that the deed of April 13, 1927, could operate as a will by delivery and recordation after death, but there can be no delivery after death (*Jones* v. *Jones,* 6 Conn. 111, 16 Am. Dec. 35, and note), and a deed not executed with the formalities required with respect to wills cannot be given testamentary effect. (*Williams* v. *Kidd,* 170 Cal. 631, Ann. Cas. 1916E, 703, 151 Pac. 1; *Johnson* v. *Johnson,* 24 R. I. 571, 54 Atl. 378.) The deed cannot, therefore, operate as a will even though the plaintiff is now dead.

However, it has been held, and we believe properly held, that where such a promise as was here shown was made on consideration that the promisee carry on the business and support the promisor, and for a term of years the promisee has faithfully performed his part of the contract, is ready, able and willing to continue to do so and has done nothing to render a continuance of the relations of the parties impossible, and it appears that he cannot be adequately compensated in damages, and the promisor, by his act, renders the promised testamentary disposition of the property impossible,

the fact that the promisor is still alive is no obstacle to specific performance of the contract, that the part performance takes it out of the statute, and the court may decree that the holder of title is an involuntary trustee for the promisee. (*Teske* v. *Dittberner*, 65 Neb. 167, 101 Am. St. Rep. 614, 91 N. W. 181, citing *Kofka* v. *Rosicky*, 41 Neb. 328, 43 Am. St. Rep. 685, 25 L. R. A. 207, 59 N. W. 788, and *Svanburg* v. *Fosseen*, 75 Minn. 350, 74 Am. St. Rep. 490, 43 L. R. A. 427, 78 N W. 4, in which many like decisions are digested.) In the *Teske Case*, however, the court points out that, as the conclusion reached is in contravention of the letter of both the statute of frauds and the statute of wills, the transactions should be closely scrutinized, as the door may be opened to "the grossest kind of undue influence and to frauds and abuses of the most serious description." Certain it is, that if such a decree is to be rendered, the promisee should fully ·establish all of the facts on which the courts have rested such a decision.

Thus, specific performance, such as was decreed in the *Teske Case*, should be awarded only where the services performed are such that the law furnishes no standard whereby their value can be measured, and equity can only make an approximation in that direction by decreeing the specific execution of the contract (*Hazleton* v. *Reed*, 46 Kan. 73, 26 Am. St. Rep. 86, 26 Pac. 450, and cases therein cited). The services usually performed in those cases wherein such relief is awarded are the special care of the aged or invalid promisor.

Here the services shown are but those of a farm-hand or foreman, the value of which may readily be ascertained; indeed, the defendant attempted to fix the value of his services, and the record contains no intimation that a court of law could not readily ascertain and determine what, if anything, defendant should recover from plaintiff in an ordinary action of debt.

Again, as a testamentary disposition of property, the promise of plaintiff was revocable during her lifetime, and

her revocation thereof put an end to the contract, regardless of whether defendant had a claim against her for ascertainable compensation for services rendered. (*Hazleton* v. *Reed,* above.)

The showing made by defendant did not measure up to the standard fixed in decisions awarding this species of specific performance in other particulars not necessary of discussion. If defendant has a remedy it is in an action at law.

The question before us in this action is as to whether the record supports the judgment quieting title to the lands in question in the plaintiff. Under the findings made and on the record no other judgment could have been rendered. The judgment is, therefore, affirmed.

*Affirmed.*

Associate Justices Stark and Galen concur.

Mr. Chief Justice Callaway and Mr. Justice Myers not sitting.

Rehearing denied November 16, 1928.