NORTHWESTERN IMPROVEMENT CO., PLAINTIFF AND RESPONDENT, v. MON-O-CO OIL CORPORATION, FALLON COUNTY, LEWIS S. JENSEN, ET AL., DEFENDANTS AND APPELLANTS.

No. 9735.
Submitted June 5, 1958. Decided Jan. 16, 1959.
334 Pac. (2d) 448.

468

Toomey & Hughes, Helena, Brown, Sande, Symmes & Forbes, Billings, Young, Martin & Young, Baker, for appellants. Charles B. Sande, Billings, argued orally.

Coleman, Lamey & Crowley, Robert P. Davidson, Billings, for respondent. H. J. Coleman, Billings, argued orally.

MR. JUSTICE ANGSTMAN:

Plaintiff, a Delaware corporation, brought this action to quiet title to all the oil, gas and mineral rights in and under certain described land situated in Fallon County. It alleged ownership of the rights and that defendants claim some unfounded right therein. The defendant Mon-O-Co Oil corporation is the only defendant claiming an interest in the property involved and will hereafter be referred to as defendant. It filed an answer containing two separate defenses or counter claims. The first of these alleged in substance that plaintiff is a subsidiary of the Northern Pacific Railway Company and that the officers and agents of the Northern Pacific are the ones who dealt with the defendant in making the alleged agreement hereinafter mentioned. It alleged that the land described in plaintiff's complaint is checkerboarded among certain other lands in Township 7 North, Range 60 and 61 East and which other lands were under oil and gas leases to the defendant and comprised a compact and integral unit adapted for the purpose of conducting oil and gas exploration and development work; that by certain correspondence between plaintiff, acting through its agents the Northern Pacific Railway Company, and the defendant, plaintiff delivered to the defendant a certain writing or permit whereby plaintiff agreed that defendant might explore the

lands of plaintiff described in the complaint for oil and gas to a depth not in excess of 2,500 feet below the surface for the period of one year commencing with May 20, 1950, and so long thereafter as drilling operations were diligently conducted in a well commenced in the one-year period and that it further promised to deliver upon request a second permit for like exploration of the same lands below the 2,500-foot level at any time on or before May 31, 1951, and so long thereafter as drilling operations were diligently conducted in a well to be commenced between May 20, 1950, and May 20, 1951; that the second permit was to be in the same form and substance as a former permit which had been issued to defendant by the Northern Pacific Railway Company, a copy of which was attached to the defendant's answer; that pursuant to the contract the defendant commenced drilling a well on or about May 20, 1950, on section 12, Township 7, Range 60 East, which is part of the structure mentioned above and continued drilling operations in the well and between September 25, 1950, and October 29, 1950, drilled through what is known as the Judith River Sandstone; that on or about the 4th day of May 1951, plaintiff, acting through the Northern Pacific Railway Company and its agents, made and delivered to the defendant a writing whereby plaintiff extended the term of the permit first mentioned above to August 20, 1951, and so long thereafter as drilling operations were diligently conducted by defendant in a well commenced upon the structure aforesaid during the term of the permit as extended and further promised to make and deliver to defendant a second permit for a like exploration of the land below the 2,500-foot level at any time on or before August 20, 1951, and so long thereafter as drilling operations were diligently conducted by the defendant; that in performance of the extension agreement defendant continued actual drilling operations in the well and diligently conducted the same and completed the operations on or about August 12, 1952, to a depth of 2,011 feet; that on the 10th of June 1952, the defendant verbally demanded the second permit covering the depths below 2,500 feet and made the

470

same demand on July 31st and August 5th while still conducting drilling operations but that plaintiff has refused and still refuses to deliver the oil and gas permit for the drilling and exploration below the 2,500-foot level.

In a second affirmative defense the defendant alleged practically the same matters alleged in the first defense and counter claim and further alleged that in reliance upon all the promises made by plaintiff and upon the extensions granted to defendant by plaintiff, defendant continued drilling operations until they were completed on or about August 12, 1952 to a depth of 2,011 feet and that defendant would not have commenced and conducted the drilling operations had it not been for the promises and extensions referred to in the answer and that under the circumstances plaintiff should be estopped from showing a revocation of the promise and extensions. Throughout the briefs this affirmative defense is referred to as the defense based upon promissory estoppel. The prayer of the answer demanded that plaintiff be ordered to issue a permit pursuant to its promise as alleged in the answer and counter claims. Plaintiff by appropriate pleading denied the material allegations of the answer and counter claims, except that it admitted execution of permit numbered 165 to explore for oil and gas to depths not in excess of 2,500 feet. The issue between the parties is whether defendant is entitled to a permit to explore for oil and gas below 2,500 feet.

The cause was tried to the court without a jury. The court found the issues in favor of plaintiff and entered judgment quieting title in plaintiff and denying any relief to defendant. From the judgment so entered defendant has appealed.

Numerous specifications of error are assigned. The principal contentions are that the court erred in its findings of fact and conclusions of law. The court expressly found that on August 10, 1950, and after there had been an interchange of letters between the parties, plaintiff issued to defendant its permit No. 165 covering the oil and gas rights on the land described in the complaint to the depth of 2,500 feet and on the same day

it advised defendant in writing that the oil and gas rights below 2,500 feet in depth would be withheld from disposition to anyone else until May 31, 1951. The court also found that later, plaintiff extended that time to August 20, 1951; that on June 9, 1952, plaintiff notified defendant in writing that the defendant's rights in regard to the minerals below a depth of 2,500 feet terminated on August 20, 1951. The court also found that defendant was not induced to commence or continue the drilling of its Mon-O-Co-Baker No. 1 well by any promise made to it by plaintiff. Specifically defendant contends that these findings are not supported by evidence.

The evidence consists of a series of letters between the president of defendant and Mr. Gilles, the chief geologist of plaintiff then residing in Billings. We shall not attempt to review all of the correspondence between the parties. It is sufficient to point out that so far as a permit for exploration below 2,500 feet was concerned, in June 1949, the president of the defendant company wrote to Mr. Gilles as follows:

"We are interested in obtaining an oil and gas permit from your company, embracing the properties checked in red on the enclosed plat. * * *

"If said permit is granted, we assume the terms and conditions will be basically as disclosed in our present permit No. 108. * * * The intent is a Madison Lime test." (Permit No. 108 was one granting the right to drill a well to the depth of 4,000 feet.) The "Madison Lime" was shown to be at a depth of about 8,000 feet.

In reply to this offer, the plaintiff made a counter offer in this language: "* * * we are in receipt this morning of a letter from our Land Commissioner, Mr. L. L. Schwarm, advising that the oil and gas rights for the land listed above will be withheld from other disposition to October first, next, to give you an opportunity to formulate your plans in connection with the development of this territory."

On July 10, 1950, plaintiff's agent wrote a letter to Mr. Haugner, president of defendant, in which he stated: "With refer-

ence to your application for a permit with option for a lease on certain of our holdings in Township 7, North, Ranges 60 and 61 East:

"The subject was discussed with our Land Commissioner, Mr. L. L. Schwarm, today and he advises that he is willing to issue a regular permit covering the gas rights to a depth of 2,500 feet for the term of one year under which you agree to commence drilling a well within the term on some portion of the premises. He also advised that he is willing to extend the informal option covering deep rights to Dec. 31, 1950." By further correspondence it was made clear that oil rights as well as gas rights were intended to be included.

The permit for depths to 2,500 feet referred to in plaintiff's letter of July 10, 1950, was issued bearing number 165, and defendant commenced drilling a well. Permit 165 and the so-called informal option was extended several times, the last time being on May 4, 1951. On that date a formal document was issued to extend permit No. 165 to August 21, 1951, "and so long thereafter as drilling operations are diligently conducted."

In the letter of transmittal sent with this document this paragraph appears:

"I may say that I am authorized to advise you that the informal option covering the deep sands on the premises covered by the permit will be continued until August 20, 1951 also."

Counsel for defendant argue that the use of the word "also" in this paragraph serves to incorporate by reference the clause from the permit extension reading "and so long thereafter as drilling operations were diligently conducted.", so that the drilling being done on the well under permit No. 165 would postpone the termination of the "option." The court was warranted in finding that this was not so. The contract or agreement considered in its entirety justifies the conclusion reached by the trial court that the permit to drill to a depth of 2,500 feet was considered separate and apart from the "option" to obtain a lease or permit for oil and gas below the 2,500-foot level, and that drilling under permit numbered 165 had nothing

to do with the "option" to obtain a permit below 2,500 feet. This conclusion is fortified by the language of permit numbered 165 in which defendant joined, wherein it is recited:

"The grantor [respondent] reserves the right for itself, its successors or assigns to enter upon the premises for the purpose of mining, boring, drilling for and removing the oil and/or gas from the premises below the depth of twenty-five hundred (2,500) feet from the surface, and all such operations shall be conducted so as to properly protect the rights of the grantee [appellant] under this contract."

Defendant did not demand issuance of the permit under the informal option until June 10, 1952, which was after the time had expired during which the plaintiff was bound to hold the rights open. Had defendant demanded a permit before the expiration of that time it might have been entitled to it, but once that time passed without a demand by defendant, its right, if such right existed, passed also.

As to defendant's contention regarding the doctrine of promissory estoppel it is sufficient to say that the same evidence showing a want of promise to issue a permit after August 20, 1951, justified the finding by the court that defendant could not and did not lay out any expense in reliance upon such a promise. Where as here there is substantial evidence to support the findings they will not be disturbed by us. Hayes v. Moffatt, 83 Mont. 214, 271 Pac. 433.

Finding no merit in defendant's contentions, the judgment is affirmed.

MR. JUSTICE BOTTOMLY, Acting Chief Justice, and MR. JUSTICES ADAIR and CASTLES, concur.

MR. CHIEF JUSTICE HARRISON did not participate in this decision.