SANGER, ADMINISTRATRIX, APPELLANT, *v.* HUGUENEL ET AL., RESPONDENTS.

(No. 4,915.)

(Submitted October 24, 1922. Decided December 8, 1922.)

[211 Pac. 349.]

*Equity—Estates of Deceased Persons—Trusts—Specific Performance—Oral Contract to Will Property—Evidence— Insufficiency — Declarations of Deceased Persons — Parol Proof to be Received With Caution.*

Witnesses—Evidence—Weight—How Determined.
  1. In determining the weight to be given to testimony it is necessary to consider not only what is said, but also the manner of saying it.

Equity—Appeal—Findings—When Conclusive.
  2. Findings in an equity case will not be disturbed on appeal unless the evidence clearly preponderates against them, in view of the more advantageous position of the trial court in hearing the witnesses testify and seeing the manner in which they testified, and in observing the general appearance, their candor or fairness or lack of it.

Oral Contracts to Will Property—Evidence Required.
  3. *Held,* that while one may make a valid oral agreement, in the absence of statute to the contrary, binding himself to dispose of his property in a particular way by last will and testament, such contracts are not favored and, to be enforceable, must be supported by

  3. Specific performance of contract to make will, see notes in **Ann. Cas.** 1914A, 399; **Ann. Cas.** 1918A, 1191.

[65 Mont. 236.]

strong, clear and satisfactory evidence, must be based upon a valuable consideration and their terms must be reasonably certain as to the subject matter, their stipulations, purposes and the parties as well as the circumstances under which they are made.

Specific Performance—Oral Contract to Will Property—Insufficiency of Evidence.

4. In an action to fasten a trust upon an estate by way of compelling specific performance of a contract alleged to have been entered into by decedent testator and plaintiff's intestate, that in consideration of the latter's refraining from attacking the will of testator's husband she would upon her death will all her property to such intestate, *held* that the evidence of plaintiff was insufficient to warrant the relief demanded because not the character outlined in paragraph 3 above.

Trusts—Declarations of Deceased Persons—Parol Proof to be Received With Caution.

5. Parol proof of statements alleged to have been made by parties (since deceased) to an oral contract to devise property by will, being subject to much imperfection and mistake, and there being strong temptation to a dishonest interested witness to fabricate such evidence, should be received with great caution.

*Appeal from District Court, Silver Bow County; Joseph R. Jackson, Judge.*

ACTION by Nora Coughlin Sanger, as administratrix of the estate of Leslie Sanger, deceased, against Sophie Huguenel and others. Judgment for defendants, and plaintiff appeals. Affirmed.

*Messrs. Nolan & Donovan, Mr. George Bourquin* and *Mr. Harlow Pease,* for Appellant, submitted a brief and one in reply to that of Respondents; *Mr. Pease* argued the cause orally.

Effort is made by respondents to introduce a rule of evidence into this case requiring a high order of proof, *viz.,* that the evidence must be "clear and convincing," "cogent, clear and forceable," or other phrase describing what amounts to proof beyond a reasonable doubt. Our answer to this contention is threefold: (1) Even should such a rule be adopted for the purposes of this case, the proof here meets its requirements. (2) Such rule does not exist in Montana for any except criminal cases. (3) Where such rule does obtain, it applies only to conflicting evidence. whereas here the evidence is uncontradicted by a single witness.

Respondents insist that the "clear and convincing" rule is of application in this state as well as other jurisdictions. It is necessary to refer to *Gehlert* v. *Quinn,* 35 Mont. 458, 119 Am. St. Rep. 864, 90 Pac. 168, sought to be avoided by respondents. Therein the lower court was reversed for giving the following instruction: "You are instructed that fraud is never presumed, but must be clearly and distinctly proven." The propriety of requiring moral certainty or indubitable proof is again denied to exist in this jurisdiction, in *Koerner* v. *Northern Pacific Ry. Co.,* 56 Mont. 511, 186 Pac. 337.

In no character of action except criminal is it so important to scrutinize the evidence, as in actions for fraud. But even in cases of fraud, says this court, the same rule of evidence obtains as in other civil cases. This rule respondents seek to escape by the attempted distinction between quantity of proof and quality of proof. In this effort counsel cannot but fail, since in *Gehlert* v. *Quinn* the court specifically refers to a "higher quality of proof" in discussing the rule.

The enunciation of the "clear and convincing" rule is cited by counsel in their brief through numerous authorities. We ask attention to the state of the evidence in such cases, and that the court contrast each case with the situation here, where the defendants introduced no evidence at the trial. They cite the following: *Davis* v. *Manson* (R. I.), 102 Atl. 714: The issues of fact there were contested for twenty-three days by twenty lawyers, the witnesses including four handwriting experts on a forgery issue. The court found the claimant's case to be impeached by internal weaknesses, and by the great interest of the principal witnesses—"The entire transaction impregnated with apparent improbabilities." *Sharpe* v. *Wilson,* 181 Iowa, 753, 161 N. W. 36: Conflicting evidence. Improbability of claimant's story and interest of witnesses emphasized by the court. *Price* v. *Wallace,* 242 Fed. 223, 155 C. C. A. 63: Conflicting evidence. "Positive denial of plaintiff's testimony." *Hamlin* v. *Stevens,* 177 N. Y. 39, 69 N. E. 119: Conflicting evidence. "Deep interest"

[65 Mont. 236.]
of plaintiff's witnesses. *Boeck* v. *Milke,* 141 Iowa, 713, 118
N. W. 874: "There is quite a material conflict between these
accounts as to what the promise of Milke was * * * Here
again the testimony is in conflict and confusion." Improba-
bility of story stressed by the court. *Pattat* v. *Pattat,* 93 App.
Div. 102, 87 N. Y. Supp. 141: Wide variance between plain-
tiff's witnesses. Court holds the contract void under statute
of frauds, which ground is largely relied on in rendering de-
cision. We can add to this list a further case, recently de-
cided by this court, which equally illustrates the reasons
which may exist for rejecting an alleged agreement of this
kind, *viz.: Gray* v. *Grant,* 62 Mont. 452, 206 Pac. 410.

*Messrs. Kremer, Sanders & Kremer, Mr. N. A. Rotering*
and *Mr. J. A. Poore,* for Respondents, submitted a brief; *Mr.*
*Poore* argued the cause orally.

"Causes of this kind are not favored and, when the promise
rests in parol, are even regarded with suspicion, and will
not be enforced except upon the strongest evidence that
it was founded upon a valuable consideration and deliberately
entered into by the deceased." (*Alexander* v. *Lewes,* 104
Wash. 32, 175 Pac. 575; see, also, *Price* v. *Wallace,* 242 Fed.
223, 155 C. C. A. 63; *Rogers* v. *Schlotterback,* 167 Cal. 35,
138 Pac. 728; *Miller* v. *Miller* (Va.), 21 S. E. 471; *Sharpe*
v. *Wilson,* 181 Iowa, 753, 161 N. W. 36; *Messier* v. *Rains-*
*ville,* 30 R. I. 161, 73 Atl. 378; *Shakespeare* v. *Markham,* 72
N. Y. 400; *Hamlin* v. *Stevens,* 177 N. Y. 39, 69 N. E. 119;
*Reilly* v. *Burkelman,* 149 App. Div. 548, 134 N. Y. Supp. 13;
*Hanly* v. *Hanly,* 105 App. Div. 335, 93 N. Y. Supp. 864;
*Pattat* v. *Pattat,* 93 App. Div. 102, 87 N. Y. Supp. 140;
*Boeck* v. *Milke,* 141 Iowa, 713, 118 N. W. 874.) The supreme
court of California, in the case of *Blanc* v. *Connor,* 167 Cal.
719, 141 Pac. 217, reviews the decisions in that state adopting
the usual equitable rule.

The *Gehlert Case* cited by appellant in no way could or
was intended to impair or destroy the effect of the provisions
of section 6102, Revised Codes of Montana of 1907 (subdi-

vision 6), to the effect that, "an agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable" cannot be enforced.

MR. CHIEF COMMISSIONER LEIPER prepared the opinion for the court.

C. Peter Sanger died testate on March 24, 1915. At the time of his death he was a resident of Silver Bow county. He bequeathed to his only child, Leslie, the issue of a former marriage, $100, and all of the remainder. of his estate was bequeathed to his widow, Louise Sanger. His will was duly probated and his estate distributed in accordance with the terms of the will. Louise Sanger died testate on March 8, 1918. By the terms of her will, Leslie Sanger was bequeathed the sum of $500 and some other personal property. All of the remainder of her estate was bequeathed to the defendants herein. This will was duly proved and admitted to probate on July 27, 1918. On October 3, 1918, Leslie Sanger died. Nora Coughlin Sanger, the plaintiff herein, was on May 3, 1919, duly appointed administratrix of his estate. The defendants herein are: (a) The executor of, and (b) the legatees under, the last will of Louise Sanger.

This action was commenced on July 21, 1919. Paragraph No. 7 of the complaint alleges in part as follows: "On or about the 1st day of April, 1915, at Butte, Montana, the said Leslie Sanger and the said Louise Sanger mutually promised and agreed between themselves that he, the said Leslie Sanger, would refrain from appearing in said court and contesting said will (Peter Sanger's will) and that in consideration thereof she, the said Louise Sanger, deceased, would by her last will and testament, leave all of her own property and all property that she received under the said will of Peter Sanger, deceased, to said Leslie Sanger, now deceased; that the said Leslie Sanger, now deceased, relying upon the said promise of Louise Sanger, now deceased, did refrain from appearing in said court, and did not contest the said will of Peter Sanger, deceased, but instead allowed and permitted the said

Louise Sanger, now deceased, to obtain and possess the property given her by said will, and also permitted her to administer said estate of Peter Sanger, deceased, as executrix; and fully kept and performed all the terms and conditions of the said agreement to be by him kept and performed; that, as appears from the said will of Louise Sanger, now deceased, said Louise Sanger, now deceased, disposed of her property otherwise and in disregard of her said promise and agreement; that at the time of said promise and agreement, Louise Sanger, now deceased, was childless.''

By the answers of the several defendants, the allegations of this paragraph relative to the making of any contract between Louise and Leslie Sanger are put in issue. The prayer of the complaint is, in substance, that the executor of the will of Louise Sanger be required, by an appropriate decree, to distribute all of the estate of Louise Sanger, after the payment of the expenses of the administration to the plaintiff as the administrator of the estate of Leslie Sanger.

A trial was had to the court without a jury. The trial court made findings of fact and drew therefrom its conclusions of law. To finding of fact No. 6, and to the conclusions of law, the appellant herein (plaintiff below) duly filed exceptions, which were overruled. Judgment favorable to defendants dismissing the action, followed. This appeal is from the judgment.

Finding No. 6 is as follows: ''That the contract alleged in plaintiff's complaint, to wit, that the said Leslie Sanger and the said Louise Sanger mutually promised .and agreed between themselves that he, the said Leslie Sanger, would refrain from appearing in court and contesting the will of Peter Sanger, deceased, and that, in consideration thereof, she, the said Louise Sanger, would by her last will and testament, leave all of her own property and all property that she received under the will of Peter Sanger, deceased, to said Leslie Sanger, was never made or entered into; nor was any other contract or agreement entered into between said Louise Sanger and said Leslie Sanger whereby any part or portion

of the estate of Peter Sanger, deceased, or any part or portion of the estate of Louise Sanger at the time of her death was to be by her willed, devised, or bequeathed to Leslie Sanger.''

The conclusions of law are as follows: ''1. That the plaintiff is not entitled to the relief prayed for in her complaint, or to any relief. 2. That this cause be dismissed.''

In determining the weight to be given to testimony, it is [1] necessary to consider, not only what is said, but also the manner of saying it. This principle is recognized by section 10508 Revised Codes of 1921, which provides in part as follows: ''A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which [the witness] testifies. * * * ''

The witnesses herein appeared before the trial judge and [2] testified. He heard what each of them said, and saw how or the manner in which they said it. He observed their general appearance while testifying, their candor or lack of candor, their fairness or lack of fairness, and in arriving at its conclusions, the trial court also had before it the printed record of what was said by each of these witnesses. This court has before it only the printed record. Obviously the trial court is in a much better position to pass judgment upon the evidence than is this court; therefore, the rule, frequently announced by this court: that the findings of the trial court will not be disturbed, unless the evidence clearly preponderates against such findings. (*Bosanatz* v. *Ostronich,* 57 Mont. 197, 187 Pac. 1009; *Boyd* v. *Huffine,* 44 Mont. 306, 120 Pac. 228; *Winslow* v. *Dundom,* 46 Mont. 71, 125 Pac. 136; *Noyes Estate* v. *Granite-Alaska Co.,* 64 Mont. 406, 210 Pac. 96.)

As above noted, Peter Sanger, by his will, devised all of his [3] property, excepting $100, to his widow, Louise Sanger, the $100 being left to Leslie Sanger. Leslie Sanger was dissatisfied with the terms of the will and threatened to begin an action contesting the will. In order to prevent the bringing of this action, it is alleged that the contract set forth in paragraph 7 of the complaint was entered into. By this

action a court of equity is asked to fasten a trust on the property belonging to the estate of Louise Sanger, which is in effect the enforcement of specific performance of the alleged contract. None of the terms of this contract were reduced to writing. Both parties to it have passed away. It is very generally held, both by the courts and text-writers, that one may make a valid agreement binding himself to dispose of his property in a particular way by last will and testament; that in the absence of a statute requiring a contract of this nature to be in writing, such contract may be oral. However, courts will not make a contract for the parties but will, under certain circumstances, specifically enforce a contract or impress a trust upon certain property. This is done in order that the intention of the parties to a contract may be carried out, but the intention must clearly appear, for courts may not enter into the realm of speculation in an attempt to determine the intention of the contracting parties. It must, therefore, clearly appear what property was intended to be impressed with the trust and who the parties are who were intended as beneficiaries of such trust. However, contracts of this kind are generally not favored, and when oral must be supported by strong, clear and satisfactory evidence; they must be based upon a valuable consideration; their terms must be reasonably certain as to subject matter, as to their stipulations, their purposes, their parties and the circumstances under which they were made. (Waterman on Specific Performance of Contracts, p. 52; 4 Pomeroy's Equity Jurisprudence, sec. 1405.)

The reason for requiring this character of evidence in order to support a parol contract of this nature is obvious. If the rule were otherwise, the right of anyone to do what he wills with his own would be in some doubt. Under subdivision 6 of section 8720 of the Revised Codes of 1921, it is provided as follows: "The following obligations cannot be specifically enforced: * * * 6. An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable."

The general rule is announced in Cyc. as follows: "A person may make a valid contract to dispose of his property by will in a particular way, and such contract will be enforceable, if he has the capacity to contract, and if the contract is fair and equitable and possesses the essentials, such as a valid consideration, acceptance of its terms showing a mutual agreement thereto, certainty and definiteness in its terms and in the designation of the promisee; and provided the contract is not within the statute of frauds, and is free from fraud, or undue influence in procuring it, and is clearly established by the testimony of disinterested witnesses, if in parol. Such contracts are not strictly speaking capable of specific performance, yet it is within the jurisdiction of a court of equity to do what is equivalent to a specific performance by fastening a trust on the property in the hands of the heirs and personal representatives." (36 Cyc. 735, 736.)

The supreme court of Washington, in speaking of this same matter, among other things, says: "Causes of this kind are not favored and, when the promise rests in parol, are even regarded with suspicion, and will not be enforced except upon the strongest evidence that it was founded upon a valuable consideration and deliberately entered into by the deceased. (Waterman on Specific Performance, sec. 41.) But while not favored and rarely enforced upon oral proofs, the power to make a valid agreement to dispose of property by will in a particular way has long been recognized." (*Alexander* v. *Lewes,* 104 Wash. 32, 175 Pac. 575.)

In the case of *Price* v. *Wallace,* reported in 242 Fed. 223, 155 C. C. A. 63, Judge Hunt uses the following language: "Courts will not aid, unless it is clearly and satisfactorily shown that the agreement relied on was made, that it was clear and specific in its terms, and that by enforcing it the true intent of the parties is being carried out."

Again it is said: "Where a contract such as this, resting in parol, and sought to be enforced after the death of the other party to it, comes before a court of equity for review, it is scrutinized, and should be scrutinized, with particular

care, and only upon a satisfactory showing that it is definite and certain and just will it be enforced. The proofs of the contract should be clear, and the acts of the claimant referable alone to the contract." (*Baumann* v. *Kusian,* 164 Cal. 582, 44 L. R. A. (n. s.) 756, 129 Pac. 986.)

The supreme court of Rhode Island, in the case of *Davis* v. *Manson,* reported in 102 Atl. 714, among other things, says: "The agreement which the complainant is seeking to enforce is in the nature of a testamentary disposition. The rule of law as to the proofs required in such cases is so well settled that there is little necessity for the citation of authorities. * * * Contracts for testamentary disposition are allowed to stand only when established by clear proof. * * * Contracts of the character in question have become so frequent in recent years as to cause alarm, and the courts have grown conservative as to the nature of the evidence required to establish them, and in enforcing them, when established, by specific performance. Such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises."

It is again stated that: "The law applicable to a case of this nature must be deemed settled. Proof of a parol agreement that the decedent promised to leave all his property to the plaintiff must furnish all the essentials of a contract, be fair and equitable, and the terms thereof definite and certain, and the agreement must be clearly established by the testimony of disinterested witnesses." (*Hanly* v. *Hanly,* 105 App. Div. 335, 93 N. Y. Supp. 864; *Pattat* v. *Pattat,* 93 App. Div. 102, 87 N. Y. Supp. 140.) To the same effect are *Messier* v. *Rainville,* 30 R. I. 161, 73 Atl. 378; *Shakespeare* v. *Markham,* 72 N. Y. 400; *Reilly* v. *Burkelman,* 149 App. Div. 548, 134 N. Y. Supp. 13.

A preponderance of the evidence is sufficient to sustain the allegations of the complaint. What we have said hereinbefore relates to the *quality* rather than to the quantity of the evidence.

The plaintiff relies upon the testimony of three witnesses as
[4]  proof that the contract relied upon was entered into
and as proof of its provisions.  These three witnesses are Dr.
McCarthy, Charles McGrath and Charles A. Blackburn.  Dr.
McCarthy testified that the first talk he had with anyone
about this matter occurred shortly after the death of Peter
Sanger and was had with Leslie Sanger; that Leslie Sanger
came to the witness' office and stated to him that he (Leslie
Sanger) was dissatisfied with his father's will and that it was
his purpose to bring an action contesting this will; that
later Louise Sanger came to witness' office and requested him
to have a talk with Leslie Sanger with a view to dissuading
Leslie Sanger from instituting an action contesting Peter
Sanger's will, and that at the same time Louise Sanger
stated to witness that Leslie Sanger would get all of her
property anyway after her death; that witness did not know
whether Louise Sanger was possessed of any property aside
from that which she received from her husband's estate; that
after having had this talk with Louise Sanger, Leslie Sanger
again came to witness' office, when the witness related to
Leslie Sanger the conversation theretofore had with Louise
Sanger; that four or five days thereafter both Leslie Sanger
and Louise Sanger came to the office of witness and a conver-
sation occurred between them in the presence of the witness,
but Dr. McCarthy's testimony is very indefinite as to what
property was to be left to Leslie Sanger.  In one instance the
testimony shows that all of her property was to be left, and
in another instance that all of these conversations had to do
only with that part of Louise Sanger's property which was
derived from the Peter Sanger estate.  Dr. McCarthy frankly
states that he cannot remember the details of this conversation;
that the witness knew that Leslie Sanger then had two or
three children; that while he is not certain, yet it is his
best recollection that these children of Leslie Sanger were
mentioned in the conversation had between Louise Sanger
and Leslie Sanger in the witness' office; and that he would
not swear but that Leslie Sanger's children were to get a

part of this property which was mentioned in this conversation.

Witness McGrath testified that he was present at a conversation had between Leslie Sanger and Louise Sanger, when the latter stated that the former would get all of her property after her death, and that she would make a will arranging it that way.

Witness Blackburn testified that in a conversation had with Louise Sanger she stated to him that an agreement had been made between Leslie Sanger and Louise Sanger by which all of her property, after her death, would go to Leslie Sanger and to his children.

As above noted, the contract relied upon is oral, and the [5] parties to it are both dead. The proof offered consists of certain statements alleged to have been made by the contracting parties to or in the presence of the witnesses above mentioned. Discussing this character of evidence, this court, speaking through Mr. Chief Justice Brantly, in the case of *Escallier* v. *Great Northern Ry. Co.*, 46 Mont. 238, 248, Ann. Cas. 1914B, 468, 127 Pac. 458, 461, well said: "Speaking generally, this character of evidence is the weakest and least satisfactory of any in persuasive value. 'With respect to all verbal admissions, it may be observed that they ought to be received with great caution. The evidence, consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens, also, that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say.' (1 Greenleaf on Evidence, 16th ed., sec. 200.) The weakness of this character of evidence is recognized by the statute, and it is thereby made the duty of a trial court on all proper occasions to instruct the jury that it is to be viewed with caution. (Rev. Codes, sec. 8028; *McCrimmon* v. *Murray*, 43 Mont. 457, 117 Pac. 73.) It is a quality which

attaches to all oral testimony as to declarations or admissions which are relevant to the issues on trial, and are competent because they are against the interest of the party making them or fall within some other rule of admissibility. Though the witness who testifies to the oral statement may be honest, his memory may be at fault, or he may have failed to comprehend and interpret the statement as it was intended to be understood by the speaker. &ast; &ast; &ast; Moreover, so easy is it to fabricate such evidence, that there is strong temptation to a dishonest, interested witness to do so.''

An examination of the testimony herein discloses that, while there doubtless was some conversation had between Louise Sanger and Leslie Sanger concerning the disposition of some property by the former, yet it cannot be ascertained therefrom, with any reasonable degree of certainty, either what property the parties intended to dispose of, or the specific person or persons who were intended to be the beneficiaries thereof. After having carefully considered the entire record in this case, we cannot say that the evidence preponderates against the findings of the trial court.

We therefore recommend that the judgment be affirmed.

Per Curiam: For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.

*Affirmed.*