WELCH ET AL., RESPONDENTS, *v.* THOMAS ET AL., APPELLANTS.

(No. 7,543.)

(Submitted June 16, 1936. Decided July 3, 1936.)

[61 Pac. (2d) 404.]

*Mr. John K. Claxton,* for Appellants, submitted a brief and argued the cause orally.

594

*Mr. T. J. Davis* and *Mr. James T. Fitzgerald,* for Respondents, submitted a brief; *Mr. Davis* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiffs brought this action seeking to have a deed absolute on its face declared to be a mortgage. Issue was joined upon the allegations of the complaint by the answer. The property conveyed by the plaintiffs was a house and lot in the city of Butte and the Bismark lode mining claim. The deed was an ordinary grant deed containing mineral reservations. Defendants affirmatively sought to have this deed reformed upon the ground of mistake, to include the minerals reserved so far as the lode mining claim was concerned. Issue was joined on these affirmative allegations by reply. The cause was tried before the court sitting without a jury. Findings of fact and conclusions of law, both special and general, were made in favor of the plaintiffs and against the defendants. Judgment was entered in conformity therewith. Motion for new trial was made, heard and denied. The appeal is from the judgment. No question is raised on this appeal as to the sufficiency of the pleadings.

Mrs. Welch, one of the plaintiffs, was at the time of the trial past ninety years of age. The defendant Ed. C. Thomas was approximately fifty-one years of age. He was a nephew of Mrs. Welch and the youngest child of her sister. When he was approximately two and a half years of age, Mrs. Welch brought him from Wales and reared him in her home until he was approximately fifteen years of age. She at that time was married to a man by the name of Westlake, and Thomas was known by that name although he was never adopted by Mr. and Mrs. Westlake as their child. When he arrived at

that age some difficulty arose, and he thereafter ceased to reside with Mrs. Welch, then Mrs. Westlake.

During the month of March, 1934, Mr. Welch, the then husband of Mrs. Welch, one of the plaintiffs in this action, was ill and died as a result of this illness on March 18 of that year. Some two years prior to that date Mrs. Welch had a broken femur, which confined her in the hospital for some five months, and which, together with old age, left her in a feeble condition. Following the year 1900, and until the week immediately prior to the death of Mr. Welch, Mr. Thomas, according to his own testimony, had only visited his foster mother on a very few occasions, once along in 1910 or 1911 when he sought to secure written authority to dispose of the lode mining claim for her, and again during the time she was in the hospital with the broken leg. Mrs. Welch at the time of the illness of her husband was, according to the testimony, without funds and was being supported by some relief agency. A practical nurse was in this manner provided to care for Mr. Welch during his illness. During the last week of his illness, Mr. Thomas called at the home of Mrs. Welch. The evidence is in conflict as to the number and the time of his various visits. We might well pause at this point to observe that the testimony, other than the facts which we have summarized above, at to what occurred on the various visits of Thomas and his wife, and also after the death of Mr. Welch, is in sharp conflict; in fact, this court is seldom called upon to consider on appeal a record wherein the testimony as presented on behalf of the respective parties is in such direct and sharp conflict as to the most minute details.

Mrs. Welch was without funds to take care of the necessary funeral expenses of her deceased husband, and was in such a feeble condition that she was unable to attend his funeral. According to her version, Thomas took charge of the funeral arrangements and either paid the expenses of the funeral or arranged for them upon his sole credit. He and his witnesses assert that all of this was done upon the express request of

Mrs. Welch; this she denies. He claims that the funeral expenses and other bills which he paid for her within the next few months amounted to the sum of $500. The plaintiffs in their complaint offered to pay this sum, and prior to the filing of the complaint made a tender of that amount to Mr. Thomas, which was refused by him.

Immediately following the burial of Mr. Welch, Mr. Thomas secured the services of an attorney of his own selection, who called at the home of Mrs. Welch; some conversation ensued at that time. The testimony as to what then occurred is likewise in hopeless conflict. The day following, Mr. Thomas and the attorney returned to the home of Mrs. Welch, at which time she signed the deed conveying the property mentioned above to Mr. Thomas. She testified that she was informed by the attorney that the deed was a mortgage and that he read it to her as such. Over objection she testified that it was her intention, and no other, to mortgage the property to the defendant Thomas as security for the debt. The attorney, Mr. Thomas, and others testified that she called for her glasses, read the various documents, and then signed them, which documents, in addition to the deed, included a bill of sale for all the personal property she owned, and likewise an agreement between her and the Thomases whereby they agreed to support her during the remainder of her life. Mrs. Welch denied that she had her glasses or ever read any of these documents. Prior to this time the defendant in some manner had secured the possession of a pawn ticket on a pawnbroker for certain jewelry pledged by Mr. Welch. The evidence is again in conflict as to how this was secured. He secured this jewelry, however, for his own use. Likewise he secured from a bank in Butte other jewelry which had been pledged by Mrs. Welch; this he sold and very reluctantly testified that he secured but little more than the amount which was necessary to redeem the pledge. Following the execution of the above instruments for some little time, according to Thomas and his wife, he provided Mrs. Welch

with some groceries and other necessities. He also insisted that she remove to his home, which she refused to do.

In the month of August, 1934, Mrs. Welch consulted an attorney and conveyed to him a one-half interest in her real property. He has joined with her as coplaintiff in this action.

The trial court found that Mr. Welch died during the month of March, 1934, and that subsequent to his death Thomas arranged for and took charge of the burial of Welch and claimed that he had expended the sum of $500 on behalf of Mrs. Welch, and that on March 23, 1934, Mrs. Welch, one of the plaintiffs, made what she thought and intended to be a mortgage, which was in fact a deed conveying her interest in her house and lot, and an attempt to convey her interest in the lode mining claim; that the deed was executed by her and intended and understood to be a mortgage for the sum of $500, and was not intended to be a deed or an absolute conveyance of any character. The court found that the defendants were not entitled to a reformation of the deed and found the issues generally in favor of the plaintiffs. Exceptions were taken to these findings. The making of these findings and the overruling of the exceptions are assigned as error in this court. Likewise conclusions of law which followed the findings are challenged by specifications of error. Error is assigned upon the making and entering of the decree. Defendants also assign error upon the court's action in overruling their objection and permitting Mrs. Welch to testify as to what her intention was in giving the deed to the house and lot. We shall discuss this specification first.

The law is well settled in this state that a grantor may show by parol evidence that a deed absolute on its face was intended merely as security for the payment of a debt and thus to be in the nature of a mortgage, and this is to be ascertained from an examination of all the facts and circumstances surrounding the transaction. It is solely a question as to what was the real intention of the parties. (*Nolan* v. *Benninghoff*, 64 Mont. 68, 208 Pac. 905.) The modern rule is, where mate-

rial and relevant to the issue, a party may testify directly as to motive, intent or belief. (2 Jones' Commentaries on Evidence, 2d ed., sec. 708, p. 1329; 1 Wigmore on Evidence, 2d ed., sec. 581.) This rule is recognized by the courts of every state of the Union, with the exception of Alabama. (See texts cited supra.) This court has recognized and approved the rule. (*Bordeaux* v. *Bordeaux*, 43 Mont. 102, 115 Pac. 25.)

In support of this contention counsel argues that the statement made by Mrs. Welch while a witness on the stand was a self-serving declaration and therefore inadmissible. He relies in his argument upon the statement of this court in the case of *Spellman* v. *Rhode*, 33 Mont. 21, 81 Pac. 395. In that case, however, the court said what it did with reference to a statement made by a party outside of court and not under oath. Much confusion abounds as to what are declarations, admissions and confessions. No text on the subject of evidence has ever attempted to give an accurate and concise definition of the word "declaration," as applied to the law of evidence. We make no attempt to define or limit the scope of the word as applied to the law of evidence. The rule mentioned above is only properly applied to a statement made by a party outside of court and not under oath. If a witness had been produced who sought to testify that at some time following the transaction here in issue, Mrs. Welch had made a statement as to what was her intention at the time of the execution of these instruments, such a statement would have been a self-serving declaration upon her part and inadmissible; but the rule relating to the inadmissibility of self-serving declarations has no application to the testimony of a witness. Statements of parties outside of court are ordinarily inadmissible, unless they come within some of the exceptions to the hearsay rule, either where they are made as a part of the *res gestae,* or where they are declarations against interest as classified in our statute (sec. 10514, Rev. Codes), which would be more properly designated by the term "admission," or some of the other recognized and established exceptions to the hearsay rule. In

the situation which was before the trial court, neither the hearsay rule nor its exceptions were applicable. Accordingly, the court below very properly permitted the witness to testify as to what her intention was in the execution of these instruments. The weight to be given to this testimony, in the light of the other facts and circumstances, was for the trier of the facts, in this case the trial judge.

The other specifications of error all relate to the subject of the sufficiency of the evidence to support the findings, judgment and decree.

The burden of proving that the deed was intended as a ▌ mortgage was upon the plaintiffs. (*Elling* v. *Fine,* 53 Mont. 481, 164 Pac. 891, Ann. Cas. 1918C, 752, and cases there cited.) It is argued on behalf of the defendants that ▌ one who asserts that a deed absolute on its face is in fact a mortgage must prove the same by clear and convincing evidence. (*Johnson* v. *Opheim,* 67 Mont. 126, 214 Pac. 951.) In the case of *In re Wray's Estate,* 93 Mont. 525, 19 Pac. (2d) 1051, 1054, we said: "In this jurisdiction civil cases are to be decided according to the greater weight of the evidence, and a bare preponderance in favor of the party holding the affirmative of the issue is sufficient to warrant, and should result in, a decision in his favor. (*Gehlert* v. *Quinn,* 35 Mont. 451, 90 Pac. 168, 119 Am. St. Rep. 864; *Parchen* v. *Chessman,* 53 Mont. 430, 164 Pac. 531.)" What we there said applies here.

▌▌ In the case of *Silfvast* v. *Asplund,* 99 Mont. 152, 42 Pac. (2d) 452, 454, we declared: "In the case of *In re Mullen's Estate,* 97 Mont. 144, 33 Pac. (2d) 270, 273, it is written: 'This court will not reverse a judgment unless the evidence strongly preponderates against the decision of the trial court, and where there is a conflict in the evidence, and it furnishes reasonable ground for differing conclusions, the judgment will not be disturbed on appeal. (*Kirby* v. *Hoeh,* 94 Mont. 218, 21 Pac. (2d) 732; *Baker* v. *Citizens' State Bank,* 81 Mont. 543, 264 Pac. 675.)' In a case such as this, where it is asserted that the evidence preponderates against the find-

ings, this court enters 'upon a review of the evidence indulging the presumption that the judgment is correct (*State ex rel. Woare* v. *Board of Commrs.*, 70 Mont. 252, 225 Pac. 389); every legitimate inference will be drawn from the evidence to support this presumption (*Security State Bank* v. *Soule*, 70 Mont. 300, 225 Pac. 127); and the testimony will be viewed in the light most favorable to plaintiff and considered as establishing every material fact which it tends to prove (*Awbery* v. *Schmidt*, 65 Mont. 265, 211 Pac. [346] 348).' (*Baker* v. *Citizens' State Bank*, supra.)'' These same rules have been applied by this court to a case of this character. (*Nolan* v. *Benninghoff*, supra, and cases there cited.)

We have not attempted to set out in great detail the testimony appearing in the voluminous transcript, which, as we have already observed, on all material questions and many of slight materiality is in hopeless and sharp conflict. The evidence given by Mrs. Welch, if believed by the trial judge, as it was, clearly supports the judgment.

It is argued that in her testimony Mrs. Welch did not remember a great many events about which counsel inquired. True, they were testified to by witnesses for the defense. She denied that many of the statements about which they testified were ever made, and that many of the alleged occurrences never happened; hence, as to these, she could not remember them. Some other facts, she testified, she did not remember. The testimony, however, of many of the defendants' witnesses—testimony given by much younger persons—likewise was demonstrated to be inaccurate and somewhat inconsistent.

It is argued on behalf of the defendants that we should follow the rule announced by this court in the case of *Casey* v. *Northern Pac. Ry. Co.*, 60 Mont. 56, 198 Pac. 141, and other cases following that decision. The rule announced in that decision applies where the testimony is inherently improbable in the light of admitted facts and the probabilities as applied to such facts. We are unable to apply the rule of that case

here. Within itself the testimony of Mrs. Welch is not improbable in the light of the admitted facts. The trial court in this case had the superior advantage of observing the various witnesses testify, and was in a better position than are we to determine who was to be believed; hence we are unable to say that the evidence preponderates against its findings and judgment.

Lastly, it is argued that there was a fatal variance between the pleadings and the proof. True, if the defendants' version of the facts and circumstances were to be believed, plaintiffs failed to prove their case; but the testimony offered in support of plaintiff's case was substantially in support of the allegations of their complaint. This contention cannot be sustained.

Judgment affirmed.

ASSOCIATE JUSTICES MATTHEWS and STEWART concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied October 9, 1936.