SANDERS, APPELLANT, *v.* SANDERS, ET AL., RESPONDENTS.
No. 9047.
Submitted February 27, 1951. Decided March 28, 1951.
229 Pac. (2d) 164.

Mr. Chief Justice Adair and Mr. Justice Bottomly dissented.

Mr. Floyd C. Fluent, Mr. William Meyer, Butte, for appellant.

Mr. William B. Frame, Mr. William B. Freebourn, Butte, for respondents.

Mr. Meyer and Mr. Freebourn argued orally.

MR. JUSTICE ANGSTMAN:

Plaintiff brought this action to quiet title to certain described real property situated in Silver Bow county. Defendant Ruby Ellen Sanders is the wife of plaintiff. She filed an answer denying plaintiff's ownership of the property and by separate defense alleged her ownership thereof.

The property in question was originally purchased from Emma Jane Cobb. The deed was taken in the name of plaintiff. On May 27, 1936, plaintiff made and executed a deed of the property to defendant. The principal question presented in the case is whether or not there was a delivery of this deed by plaintiff to defendant.

The court after trial found the issues in favor of defendant and against plaintiff. Plaintiff's motion for new trial was denied and he appeals from the judgment. The court specifically found that the deed of May 27, 1936, from plaintiff to defendant Ruby Ellen Sanders was delivered to her and that she has been in possession thereof ever since. The deed was placed of record on September 27, 1945.

The court found that defendant contributed $500 at the time the property was purchased as the purchase price, thereof, and later made other substantial contributions to the purchase price of the property and to its upkeep. The court specifically found that defendant is now and ever since the delivery of the deed has been the lawful owner of the property.

Numerous specifications of error are made by plaintiff but they resolve themselves into one main question, namely, was there a delivery of the deed. Our province on the appeal is to determine whether or not the findings and conclusions of the court are supported by substantial evidence.

It is true that in an equity case this court has the right to make independent findings of fact after a review of all

of the evidence. That is the effect of R. C. M. 1947, section 93-216, and see: Harrison v. Riddell, 64 Mont. 466, 210 Pac. 460; In re Benson's Estate, 110 Mont. 25, 98 Pac. (2d) 868; Miller v. Miller, 121 Mont. 55, 190 Pac. (2d) 72; Hart v. Barron, Mont., 204 Pac. (2d) 797.

But if there is in the record substantial evidence supporting ▮ the findings of the trial court we will not interfere with those findings. Barcus v. Galbreath, Mont., 207 Pac. (2d) 559; Sanders v. Lucas, 111 Mont. 599, 111 Pac. (2d) 1041; Conway v. Fabian, 108 Mont. 287, 89 Pac. (2d) 1022; Hayes v. Moffatt, 83 Mont. 214, 271 Pac. 433; Reynolds v. Trbovich, Mont., 210 Pac. (2d) 634. And where the evidence is conflicting we follow the conclusion of the trial judge by reason of the fact that he has the advantage denied to us of observing the witnesses and noting their conduct and demeanor on the stand. Welch v. Thomas, 102 Mont. 591, 61 Pac. (2d) 404; Lewis v. Bowman, 113 Mont. 68, 121 Pac. (2d) 162; Sanger v. Huguenel, 65 Mont. 236, 211 Pac. 349; Opp v. Boggs, Mont., 219 Pac. (2d) 647. That is what Chief Justice Brantly had reference to in the early case of Bordeaux v. Bordeaux, 32 Mont. 159, 80 Pac. 6, 8, where in pointing out the duty and power of this court in an equity case, in reaching its own conclusion he said this court must, "so far as it may" exercise "a due regard for the findings of the district court, based, as they are, upon the testimony of witnesses delivered *ore tenus* in the presence of the court".

The evidence given by defendant briefly summarized is to ▮ this effect: That the deed from the Cobbs was to be made to both plaintiff and defendant; she supposed that had been done not having read the deed. When her attorney examined the abstract which was after she had the deed from plaintiff, she learned that the deed from the Cobbs was to plaintiff alone. She said that on May 27 or 28, 1936, plaintiff, prior to taking a long trip by airplane, handed the deed in question to her saying: "Here, Ruby, I am going to give you what I promised you; I always promised I would take care of you. Take this and keep care of it." In a few days she took it to her attorney, Mr. Frame, '

and he advised her to record it. This she decided to do and placed it in her purse and laid it aside from time to time thinking she would record it when she would be up town. At the time the deed was given to her it was a fresh, clean deed. She carried the deed "back and forth" intending to record it when she was up town but never had sufficient time to do so. She had the deed in her possession from the 27th or 28th of May 1936 until it was recorded by her attorney at her direction on the 27th day of September 1945. From September 27th until the day of the trial it was in the possession of her attorney, Mr. Frame.

Defendant worked at times as a nurse during her marriage to plaintiff and used the earnings to buy food and clothing for the children.

In the fall of 1945 plaintiff gave defendant an unmerciful beating and threw her down the cellar steps. She went to her attorney to see about a divorce. At that time her attorney again advised her to have the deed recorded and this was done. The parties became reconciled and continued to occupy the house as husband and wife until defendant left on November 13, 1946, because plaintiff made threats against her. She again went to see her lawyer and at that time the deed was patched up with scotch tape at places where it had been folded and worn from carrying it about.

Mr. Frame corroborated defendant on many of the important details of her testimony. He said that the deed was freshly typed when he first saw it but that it was worn in places where it had been folded at the time defendant brought it to him for final recordation.

It is true that plaintiff denies the testimony offered by defendant but this merely presented a conflict in the evidence and as above noted we will not interfere with the court's findings under such circumstances unless the evidence of the defendant is contradictory in itself or so inherently improbable or contrary to physical facts as to be unworthy of belief. We

fail to see where the evidence of defendant is subject to these infirmities.

The evidence is substantially what this court upheld as sufficient to show delivery in the case of Estey v. Haughian, 112 Mont. 36, 113 Pac. (2d) 325. Plaintiff contends that the evidence of the worn condition of the deed corroborates his testimony that it became worn while he was carrying the deed about. But there is just as much reason to believe that it was worn by reason of defendant carrying it about as it was from plaintiff doing so.

Plaintiff counts strongly on the court's finding of fact No. 3. It expressly found that on the same day that the deed in question here was executed defendant made and executed a deed conveying the same property to plaintiff.

Defendant denied that she executed such a deed. Plaintiff and the witness Kenck both testified to the contrary.

The fact that the court on this issue rejected the testimony of defendant is no reason for rejecting her entire testimony. If the court was satisfied that her evidence on that point was deliberately false, it would only furnish grounds for distrusting other parts of her testimony, R. C. M. 1947, sec. 93-2001-1, subd. 3, and would not necessarily call for a rejection of all of it. Furthermore the court may well have concluded that defendant was mistaken about the execution of the deed from her to her husband. It would not necessarily affect the result of the case because that deed evidently was never delivered to plaintiff and it was not produced in evidence. Even though such a deed was made and even if it were intended at the time made that neither deed was to be effective until death as plaintiff testified, still plaintiff had the right to change his mind thereafter and make delivery of the deed and cause it to be operative whenever he saw fit to do so.

Plaintiff also argues that the physical facts refute the testimony of defendant because according to her evidence plaintiff never saw the deed from the time it was delivered to her in May 1936 until it was produced in court and yet he testified

concerning its creases and worn condition before it was produced in court.

The record does not sustain plaintiff in this particular. When plaintiff was on the witness stand he was asked to and did examine the deed. It was after he had thus examined it that he gave testimony to the effect that its worn condition was caused by his carrying it around in his pocket.

Plaintiff contends that defendant's evidence is self-destructive because she testified that when the deed was given to her by plaintiff she thought a grant deed could not be recorded until after death. That was a collateral matter and has no determinative effect upon the case. Within two or three days after the deed was handed to her she learned from Mr. Frame that she was mistaken about the right to record the deed.

Plaintiff points to other circumstances as indicative of the fact that his version of the facts rather than defendant's should be accepted by this court. We have given consideration to all of these circumstances but find in none of them any justification for interfering with the trial court's findings and conclusions.

What was said by this court in Johnson v. Blyberg, 82 Mont. 336, 266 Pac. 1103, is applicable. This court in that case said: "Any discussion of the evidence would be utterly useless; a waste of labor and time. A careful study of the transcript, aided by the briefs of counsel, leads to the conclusion that, looking at the case from the view most favorable to plaintiff, nothing more than a conflict of evidence is presented."

The only other question presented is whether the court erred in overruling and denying plaintiff's motion for a new trial. The motion questions the sufficiency of the evidence—a point we have already considered. It also was based upon alleged newly discovered evidence. It is sufficient to say of the newly discovered evidence that it is merely cumulative or impeaching in character. It corroborates the testimony of plaintiff and contradicts that offered by defendant. This court has frequently held that a motion for new trial is properly denied when based

merely on cumulative testimony. In re Colbert's Estate, 31 Mont. 477, 78 Pac. 971, 80 Pac. 248, 107 Am. St. Rep. 451; State v. Matkins, 45 Mont. 58, 121 Pac. 881; State v. Gies, 77 Mont. 62, 249 Pac. 523; State v. Collett, 118 Mont. 473, 167 Pac. (2d) 584.

Finding no reversible error in the record, the judgment appealed from is affirmed.

MR. JUSTICE METCALF, concurs.

MR. JUSTICE FREEBOURN, not participating.

MR. CHIEF JUSTICE ADAIR (dissenting).

This appeal is from a decree entered in an ordinary suit to quiet title to real property. Such suits are in equity being a development of *bills quia timet* or bills of peace remedies which originated in and appertained to the jurisdiction of the court of chancery. 44 Am. Jur., Quieting Title, secs. 1-3, pp. 3-5; 51 C. J., Quieting Title, sec. 1, p. 132 et seq.

The appeal was heard by four members of this court, the remaining justice deeming himself disqualified to sit in the cause. The four justices who heard the case are agreed that the decree of the district court should be affirmed but stand evenly divided as to the powers and duties of this court, under the law, R. C. M. 1947, sec. 93-216, on the appeal of an equity case.

We do not agree that, on appeal in equity cases, the province of this court is merely to determine whether or not the findings and conclusions of the district court are supported by substantial evidence or that whenever substantial evidence appears which may support the district court's findings this court may not interfere with such findings nor do we agree that where the evidence is conflicting this court must adopt the conclusion of the trial judge except only in cases where the evidence of the defendant is contradictory in itself or so inherently improbable or contrary to physical facts as to be unworthy of belief.

We do not concede that such are the rules of law that now govern appeals to this court in equity cases or in matters and

proceedings of an equitable nature nor have they been the law in this jurisdiction at any time since December 10, 1903, the effective date of the "Fair Trial Law" enacted, at the Second Extraordinary Session of the Eighth Legislative Assembly, as Chapter 1 of the Second Extra Session of 1903, page 7, now R. C. M. 1947, section 93-216.

The powers and duties of the supreme court on appeals are prescribed by the Constitution and the statutes of this state.

The Constitution provides: "The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state, and shall have a general supervisory control over all inferior courts, under such regulations and limitations as may be prescribed by law." Montana Constitution, Art. VIII, sec. 2.

"The appellate jurisdiction of the supreme court shall extend to all cases at law *and in equity, subject, however, to such limitations and regulations as may be prescribed by law.*" Art. VIII, sec. 3. (Emphasis supplied.)

In adopting the Montana Codes of 1895 the legislature, by the enactment of sections 20 and 21 of the Code of Civil Procedure, provided:

"Section 20. The appellate jurisdiction of the Supreme Court extends to all cases at law and in equity.

"Section 21. The Supreme Court may affirm, reverse or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had. The decision of the court must be given in writing and a syllabus thereof must be prepared by the court and filed with the opinion; and in giving its decision, if a new trial be granted, the court must pass upon and determine all the questions of law involved in the case, presented upon such appeal, and necessary to the final determination of the case. Its judgment in appealed cases must be remitted to the court from which the appeal was taken."

Section 21 of the Code of Civil Procedure of 1895 applied alike to all appeals to this court whether in cases at law or cases

in equity. On the appeal of either class of cases the 1895 statute said that this "court must pass upon and determine *all the questions of law* involved in the case, presented upon such appeal, and necessary to the final determination of the case" making no mention of the *questions of fact* involved.

Under the foregoing statute, sec. 21, this court, in a long series of decisions covering more than a quarter of a century, ruled that in both equity cases as well as in law cases, wherein the record disclosed the evidence to be conflicting, the appellate court was without power to disregard the findings of the district court, express or implied, or to make other and different findings and conclusions of its own. Thus did the court construe section 21 of the Code of Civil Procedure of 1895.

In the year 1903 all this was changed as to appeals in equity cases and in matters and proceedings of an equitable nature.

The Eighth Legislative Assembly by the enactment of Chapter 1 of the Laws of the Second Extra Session of 1903, page 7, commonly known as the "Fair Trial Law" amended section 21 of the Code of Civil Procedure of 1895 to read: "Section 21. The Supreme Court may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had. The decision of the court must be given in writing and a syllabus thereof must be prepared by the court and filed with the opinion; and in giving its decision, if a new trial be granted, the court must pass upon and determine all the questions of law involved in the case, presented upon such appeal, and necessary to the final determination of the case. Its judgment in appealed cases must be remitted to the court from which the appeal was taken. *In equity cases, and in matters and proceedings of an equitable nature, the Supreme Court shall review all questions of fact arising upon the evidence presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, and determine the same, as well as questions of law, unless for good cause, a new trial or the taking of further*

*evidence in the court below be ordered: Provided, that nothing herein shall be construed to abridge, in any manner, the powers of the Supreme Court in other cases."* (Emphasis supplied.)

The new matter which the Eighth Legislative Assembly added to section 21, supra, is set forth above in italics.

Thus did the statute, sec. 21, as amended in 1903, make it mandatory for the supreme court on the appeal of an equity case to "review *all questions of fact arising upon the evidence presented in the record,* whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, *and determine the same,* as well as questions of law, unless, for good cause, a new trial or the taking of further evidence in the court below be ordered."

In Bordeaux v. Bordeaux, 32 Mont. 159, 165, 80 Pac. 6, 8, being an appeal in an action for divorce, decided in 1905, this court, speaking through Chief Justice Brantly, said: "It is said, however, that the evidence on the subject of condemnation is conflicting, and that for this reason the court, under an unbroken line of its own decisions rendered during the past 26 years, is not at liberty to disregard the findings of the district court, express or implied, and make up its own conclusion upon the evidence. This rule has always heretofore been observed by this court, as is evidenced by the decisions referred to, both in equity cases and cases at law. *In equity cases, however, the rule has been changed by act of the Legislature, whereby it is made the duty of this court to determine all questions of law and of fact involved, unless for a good reason a new trial or the taking of other evidence in the district court be ordered.* Act of 1903, 2d Ex. Sess. p. 7. This statute seems to have been overlooked by counsel. Whether the power conferred by it was already vested in the court without legislative enactment or not we shall not now pause to inquire. It is sufficient to say that, in so far as the decisions referred to are concerned, they do not now apply in the strict sense to equity cases, and this court has power, and it is its duty, so far as it may, exercising a due regard for the findings of the district court, based, as they are,

upon the testimony of witnesses delivered *ore tenus* in the presence of the court, to reach its own conclusions, and to declare upon the rights involved accordingly.'' (Emphasis supplied.)

The rule of law set forth in R. C. M. 1947, section 93-216, was written and enacted by the law-making department of this state. It expressly prescribes the powers and duties of this court on appeals in equity cases. In construing this statute it is our office simply to ascertain and declare what is in terms or in substance contained therein,—not to insert what has been omitted or to omit what has been inserted, R. C. M. 1947, sec. 93-401-15, and most certainly not to rewrite the statute so as to reinstate the rule prescribed by section 21 of the Code of Civil Procedure of 1895, so long ago discarded by the law-makers of this state as unfair and unworkable in equity cases such as the quiet title suit now before us.

The bench and bar, as well as the people of this state, are entitled to know whether the 1895 statute or the 1903 amendment thereto now governs appeals in equity cases such as quiet title suits and in matters and proceedings of an equitable nature or wherein the procedure is that of the equity practice such as in suits for divorce.

Clearly it is the duty of this court to follow the mandate of the present statute, R. C. M. 1947, sec. 93-216, rather than that of section 21 of the Code of Civil Procedure of 1895 as it read prior to the 1903 amendment. In the language of Chief Justice Brantly, 132 Mont. at page 165, 80 Pac. at page 8 of the Bordeaux Case, supra, ''This statute seems to have been overlooked''. See also: State ex rel. Nagle v. Naughton, 103 Mont. 306, 310, 311, 63 Pac. (2d) 123, and the cases therein cited; Sullivan v. Marsh, Mont., 225 Pac. (2d) 868; Higby v. Hooper, Mont. 221 Pac. (2d) 1043; Hart v. Barron, Mont., 204 Pac. (2d) 797, 802, and Miller v. Miller, 121 Mont. 55, 190 Pac. (2d) 72.

Since a quorum does not agree on the law which prescribes the powers and duties of this court on appeals in equity cases

no law is here settled although the decree of the district court stands affirmed.

MR. JUSTICE BOTTOMLY:

I concur in the foregoing dissenting opinion of Mr. Chief Justice Adair.