ROBERT C. LONG and REVA LONG, Plaintiffs and Appellants, v. NEDRA M. CORNELL, as Administratrix of the Estate of AMY HILDA LUNDIN, Deceased, Defendant and Respondent.

No. 10492

Submitted March 19, 1963. Decided May 8, 1963.

381 P.2d 302.

Sias & O'Donnell, Chinook, Oscar Hendrickson, Chinook (argued orally), for appellants.

Burns & Thomas, Chinook, Bernard W. Thomas, Chinook (argued orally), for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal in an action to compel specific performance of an alleged contract to convey lands. Trial was had by the court sitting without a jury. Judgment was entered for defendant-respondent.

One of the appellants, Reva Long, is a niece of the deceased Amy Hilda Lundin, and through this relationship the appellants were given an opportunity to farm the land in question. Prior to 1948, the land had been leased to other persons, but either due to a lack of payments by the third parties or some other cause, Mrs. Lundin desired to make a change. She visited appellants in the Spring of 1948, and as a result of the visit the appellants took over the acreage (some 320 acres) in question located in Phillips County, Montana, by payment to Mrs. Lundin of $150 per year commencing in 1948.

Appellants contend that Mrs. Lundin stated that if they would pay her $150 per year until the time of her death that the land would be theirs. They further produced a letter written in 1949 by the deceased, the pertinent parts of which are as follows:

"Dear Reva and Bob.

"Got your letter today. *Well you know what the agreement was as long as you payed me $150 each spring you could have the use of the land* as long as I lived, and then it would be yours —if you don't do that it won't be my fault. I am not rich as you seem to imagine have not bin able to do anything for more than a year and so I need money to live too and will have to try to get it some way. if you will pay my taxes before they

become delinquent and send me a note due Oct 1st 1949 it will be o. k. if the taxes are $43.00 as I remember it will be 107.00 left. I am not being hard hearted but I just am not able to earn any thing *and the rent is reasonable* so I think you won't be out much even if you pay now as I have been depending on think you will be seeing Henry & Druce pritty soon if not allready. Henry does not write much to anybody so dont let that bother you." [Sic]  Emphasis supplied.

In considering whether or not the district judge was guilty of an abuse of discretion, the above emphasized portion of the letter must be considered. The words "and the rent is reasonable" must certainly indicate what was in the mind of the writer of the letter concerning the payment for the use of the land each year.

As is noted by the letter, the appellants secured possession of the land for $150. They paid the taxes and this amount was deducted from the $150. While the entire acreage was in pasture at the time appellants took over, the evidence showed that within some five years approximately 115 acres had been broken up and put into wheat. While appellants had no reliable statistics as to how much income the land produced while they farmed it testimony was received regarding production from like adjacent land, the $150 per year was a good investment for the appellants who farmed the land until the decedent's death in the Fall of 1957. Within a few days after being informed of her Aunt's death, Mrs. Long wrote a letter to an uncle, who lived in the town where the Aunt had died, the pertinent parts of which letter are as follows:

"Nov. 9.  Well this is as far as I got the other day.  Surly is cool out here.  Would you let me know if Amy had a will as sepose she had more property out here then down there. Who is administrator she always said I was to get part of her land out here and if it isn't like that we will have a bill in for

summer fallowing and breaking and would like to know far enough ahead so if we can get money to buy her land." [Sic].

In addition to this evidence being received by the court, testimony was received from Anson Bengston, a brother of Mrs. Long, whose testimony was contradictory to the Long's contentions. While it was recognized by the court that Mr. Bengston and the Longs did not get along, the witness did produce a letter from the deceased which indicated that she intended to sell Bengston the land. Prior to receiving the letter, Bengston had visited his Aunt in Minnesota and had made her an offer for the land in question. In reply she wrote him on March 21, 1956, approximately one year and a half before her death, as follows:

"Dear Anson & Family

"Got your letter a day or two ago well we are going to have to wait another year as Reva has already paid the rent money for this year, any way I am not in any hurry to sell and let the income tax take it away from me. And another thing that was Jims and my homestead and it is hard to part with, but don't worry nobody else is going to git it you have first chance. I am not going to die right away was hoping I could come out this summer will have to see later on am feeling pretty good only I have to take it easy can't work or do any hurrying. * * *" [sic].

At the conclusion of the testimony, the district judge in his findings of fact and conclusions of law found that appellants had no more than a year to year lease, and that Mrs. Lundin had not bound herself to a contract that entitled appellants to specific performance.

The six specifications of error set forth by the appellants are all concerned with whether or not there was credible evidence to support the findings of the court.

By the findings of the district court, the conflicts in the evidence were here resolved in favor of the respondent, defendant. This court has previously held that it has the right

to make independent findings of fact in equity cases, after a review of all the evidence. Sanders v. Sanders, 124 Mont. 595, 229 P.2d 164. Such holding is modified by the following statement from Poepping v. Monson, 138 Mont. 38, 43, 353 P.2d 325, where, quoting from Sanders v. Sanders, supra, 124 Mont. at 597, 229 P.2d at page 164 and which language is applicable to the present appeal, the court stated:

" 'But if there is in the record substantial evidence supporting the findings of the trial court we will not interfere with those findings. Barcus v. Galbreath, 122 Mont. 537, 207 P.2d 559.' "

The alleged contract this court is asked to rule upon by the appellants is uncertain as to the intention of the parties, and it is well-settled that a contract to be specifically enforceable must be complete and certain in all matters included within its scope. See 81 C.J.S. Specific Performance § 35, p. 494; Steen v. Rustad, 132 Mont. 96, 313 P.2d 1014; and Reeves v. Littlefield, 101 Mont. 482, 54 P.2d 879.

The letter set forth in the complaint, taken with the evidence submitted, does not reveal a contract sufficient, complete, and certain to be the basis for a decree of specific performance. The decision of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, ADAIR and DOYLE, concur.