FILED

February 23 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0530

DA 15-0530

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 43

BARBARA SPARKS, PERSONAL REPRESENTATIVE
OF THE ESTATE OF KURT R. HEIGIS,

        Plaintiff and Appellant,

  v.

FRANCES EMMERT,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
                  In and For the County of Stillwater, Cause No. DV 14-56
                  Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Douglas D. Howard, Heard & Howard Law Office, PLLC, Columbus, Montana

        For Appellee:

                Ann E. Davey, Vincent Law Office, Columbus, Montana

Submitted on Briefs:  January 27, 2016

Decided:  February 23, 2016

Filed:

_____

Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Barbara Sparks (Sparks) appeals from an order entered by the Twenty-Second Judicial District Court, Stillwater County, granting Frances Emmert (Emmert) summary judgment. We reverse and remand.

¶2 Restated, Sparks presents the following issue for review:

*Did the District Court err in granting summary judgment in Emmert's favor?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 This case concerns the disputed validity of a quitclaim deed (Deed) executed by Kurt Heigis (Heigis) purportedly conveying certain real property to Emmert, Heigis' long-time friend and former short-term girlfriend. The Deed's subject real property was Heigis' home, which is located on approximately fifty seven acres in Columbus, Montana and has been owned by Heigis' family for three generations (Heigis Property).[1] Heigis and Emmert met and became friends in the early 1970's. For a short time in 2000, Heigis employed Emmert as a hand in his landscaping business. Heigis and Emmert dated for approximately four months beginning in late 2000. After their more intimate relationship ended amicably, Heigis and Emmert remained friends. Emmert describes their relationship as "like family."

¶4 On June 17, 2001, Heigis executed and a notary notarized the Deed. According to Emmert, on the same day the Deed was executed, Heigis personally delivered it to Emmert at her home in Reed Point, Montana. Heigis told her to keep it and not record it

---

[1] The legal description of the Heigis Property is S 1/2 SE 1/4 less Tract as shown on Certificate of Survey No. 260899, Section 24, Township 3 South, Range 19 East, Principal Meridian of Montana.

until "something happened to him." Also, according to Emmert, she and Heigis agreed that Heigis would continue to live on the Heigis Property, maintain it, and pay for its expenses. Heigis explained to Emmert that he was giving her the Deed because he knew she would not sell the Heigis Property. Emmert stored the Deed in her safe. After physically delivering the Deed to Emmert, Heigis continued to live in his home on the Heigis Property. He also maintained the property and paid for its insurance and taxes. On October 31, 2001, Heigis executed a mortgage on the Heigis Property acting as its mortgagor.

¶5 At some point in 2003, while Heigis was at Emmert's house visiting her, Emmert explained to Heigis that she was planning to move to Wyoming and asked if he would take back the Deed. Emmert attempted to physically return the Deed to Heigis, but Heigis refused it and reiterated to her that he wanted her to keep it. Emmert replaced the Deed in her safe. Emmert did not move to Wyoming.

¶6 On November 1, 2007, Heigis executed an additional mortgage on the Heigis Property acting as its mortgagor. On August 23, 2010, Heigis requested a survey be prepared of the Heigis Property for the purpose of a gift or sale to a family member. The landowner certification on the survey states, "Tract A," comprising approximately twenty acres, "is to be transferred to my daughter Joanna Mong." Heigis told Emmert about his plan to give his daughter some of the Heigis Property and she agreed it was "okay" with her. This contemplated transfer never occurred, apparently because Heigis' daughter moved to Billings, Montana instead. Heigis executed three loan modifications to the

3

additional, November 1, 2007, mortgage on December 17, 2010, December 6, 2011, and November 26, 2013.

¶7 On February 9, 2014, Heigis was murdered while vacationing in Costa Rica. On March 5, 2014, Emmert recorded the Deed in the Stillwater County Clerk and Recorder's Office. Sparks, Heigis' daughter, acting as personal representative of his estate, initiated an action against Emmert to quiet title to the Heigis Property. Both parties filed motions for summary judgment. Emmert argued the facts were undisputed and that the Deed was legally delivered on June 17, 2001. Sparks agreed that the facts were undisputed, but countered that the Deed was inoperative because it was never delivered. The District Court concluded that the Deed was legally delivered and granted Emmert summary judgment. Sparks appeals.

## STANDARD OF REVIEW

¶8 We review an entry of summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as the district court. *Davis v. State*, 2015 MT 264, ¶ 7, 381 Mont. 59, 357 P.3d 320.

## DISCUSSION

¶9 *Did the District Court err in granting summary judgment in Emmert's favor?*

¶10 Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). The party opposing entry of summary judgment "must establish with substantial evidence, as opposed to mere denial, speculation, or conclusory assertions,

4

that a genuine issue of material fact exists or that the moving party is not entitled to prevail under applicable law." *Hansard Mining Co. v. McLean*, 2014 MT 199, ¶ 10, 376 Mont. 48, 335 P.3d 711 (citation omitted).

¶11 On appeal, Sparks contends that summary judgment was granted in error because an issue of material fact existed—whether delivery occurred—and substantial evidence supported a conclusion that delivery did not occur. The delivery necessary to legally convey real property did not occur, she argues, because after executing the Deed, Heigis continued to retain exclusive dominion and control over the Heigis Property until his untimely and unfortunate death. Sparks contends further, that because the Deed is ineffective and invalid under § 70-1-508, MCA, because it was not delivered, Heigis' estate owns the Heigis Property. Emmert counters that, under § 70-1-509, MCA, if a deed is executed, its delivery is presumed and the evidence that Heigis continued to live on and manage the property after executing the Deed does not clearly or convincingly rebut that presumption. Emmert argues the District Court correctly granted summary judgment in her favor.

¶12 "A grant takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor." Section 70-1-508, MCA. "A grant duly executed is presumed to have been delivered at its date." Section 70-1-509, MCA. This presumption may be rebutted. Clear and convincing evidence contrary to the presumption is necessary for rebuttal. *Gross v. Gross*, 239 Mont. 480, 482, 781 P.2d 284, 285 (1989) (citations omitted). A grant may not be delivered conditionally; instead, delivery is deemed to be absolute. Section 70-1-510, MCA. Transfer vests title "unless a different intention is

5

expressed or is necessarily implied." Section 70-1-519, MCA. An unrecorded deed is valid as between the parties. Section 70-21-102, MCA.

¶13    Delivery is a question of intent. 23 Am. Jur. 2d *Deeds* § 106 (2013); *Roman v. Albert*, 81 Mont. 393, 407, 264 P. 115, 120 (1928) (citation omitted). "To be valid and effective, the act of delivery of a deed must be accompanied by the intent that it becomes presently operative as such and presently pass title." 23 Am. Jur. 2d *Deeds* § 106 (2013). The grantor must intend to divest himself of his title so as to lose all dominion, power or control over it and place it beyond the right of recall. *Miller v. Talbot*, 115 Mont. 1, 10-11, 139 P.2d 502, 507 (1943). "[T]he failure of the grantor to reserve a life estate, and the grantor's remaining in possession of the property and the deed until death, strongly indicates that there was never a delivery of the deed to the grantees." 23 Am. Jur. 2d *Deeds* § 143 (2013). "The facts and circumstances which have been held sufficient to constitute the actual or constructive delivery of a deed are exceedingly numerous and varied." *Springhorn v. Springer*, 75 Mont. 294, 300, 243 P. 803, 804 (1926).

¶14    Acts or declarations of the grantor subsequent to physically delivering a deed to the grantee to hold until a future time are admissible as bearing on the intention of the grantor to make delivery. 23 Am. Jur. 2d *Deeds* § 146 (2013). Examples of subsequent statements of the grantee that were considered as evidence to dispute whether delivery had occurred in other jurisdictions include declarations that: 1) the grantor proposed or desired to sell the property purportedly conveyed by the deed; 2) the instrument was in effect a will; 3) the delivery was contingent upon certain eventualities; 4) the grantor intended to destroy the deed; 5) the grantor was under duress during the execution of the

6

instrument; and 6) the grantor, expressly or by necessary inference, indicated that the grantor considered himself or herself to be the owner of the property. 23 Am. Jur. 2d *Deeds* § 146 (2013).

¶15 The grantor's right to recall a deed has been a determining factor in several cases which have similarly focused on whether a deed had been effectively delivered. *See Hayes v. Moffatt*, 83 Mont. 214, 226-27, 271 P. 433, 437 (1928); *Miller*, 115 Mont. at 8-9, 139 P.2d at 506. Often, the facts presented involve either a third party or a safety deposit box holding an executed deed. Typically, courts hold that where both the grantee and grantor have access to the document, the deed has not been delivered because it is still subject, at least in part, to the grantor's dominion and control. Courts have held that where a grantor has access to and could destroy or retake the Deed if they changed their mind, the document was not delivered.

¶16 Here, the record indicates Heigis and Emmert enjoyed a decades-long friendship. The Deed was executed on June 17, 2001, and is presumed by statute to have been delivered on that date. Emmert had possession and exclusive control over the deed, which she kept in her personal safe at her home. Heigis explained to Emmert that he wanted her to have the Heigis Property because he knew she would not sell it. The parties agreed that Heigis would continue to live on, and maintain, the Heigis Property. This evidence is substantial and lends to a conclusion that Heigis intended to transfer title to Emmert upon delivery, presumably June 17, 2001, and during his lifetime.

¶17 Conversely, the record also indicates that after executing the Deed, Heigis continued to live on the Heigis Property and pay for its taxes, insurance, and

maintenance. Subsequent to his manual delivery of the Deed, Heigis executed two mortgages on the Heigis Property and three amendments to the second mortgage as its mortgagor and owner. Further, Heigis had the land surveyed, as its owner, for the purpose of a family transfer he was contemplating wherein he planned to give roughly twenty acres to his daughter, Joanna Mong. Emmert admits she agreed to Heigis' plan to give a portion of the Heigis Property to his daughter. Heigis purportedly asked Emmert to wait until "something happened" to him before recording the Deed. This evidence is substantial as well and supports a conclusion that Heigis considered himself to be the owner of the Heigis Property until his death. It suggests Heigis intended the Deed to be a will-replacement and that delivery, and transfer of ownership, not occur during his lifetime or at all. This evidence also indicates Emmert acknowledged that the Heigis Property belonged to Heigis during his lifetime and was his to maintain, mortgage, recall, and, even, give away.

¶18 Additionally, the record indicates Emmert attempted to return the Deed to Heigis in 2003 when Emmert was considering moving to Wyoming. This action could be construed as evidence indicating either that the parties believed Heigis could simply retake the Deed or that the parties understood the property was Emmert's and that she was generously willing to give it back.

¶19 This case asked the District Court to address whether the facts presented represented the legal delivery of a deed that is necessary to convey real property in Montana. Delivery is a question of intent. The District Court relied on evidence in the record to conclude that delivery had occurred. However, substantial evidence in the

record also supported the opposite conclusion—that delivery had not occurred. Because the issue of delivery, and its concomitant determination of Heigis' intent, was material to the resolution of Sparks' and Emmert's dispute, and because substantial evidence supported either conclusion, the existence of the issue precluded the District Court from granting summary judgment to either party.

## CONCLUSION

¶20 The District Court erred in granting summary judgment in Emmert's favor because an issue of material fact, whether the Deed was legally delivered, existed and Emmert was not entitled to judgment as a matter of law. Reversed and remanded for further proceedings consistent with this Opinion.


/S/ LAURIE McKINNON


We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE


Chief Justice Mike McGrath, concurring.


¶21 Montana law allows landowners to transfer property, effective upon the death of the grantor, without a will or a probate proceeding, by executing a beneficiary deed. Section 72-6-121, MCA. To be valid, a beneficiary deed must be properly executed and recorded in the office of the clerk and recorder of the county in which the property is located, prior to the death of the owner. Section 72-6-121(5), MCA.

9

¶22 Had Mr. Heigis signed and recorded a beneficiary deed, this litigation could have been avoided. Emmert would have been the owner of the property. Now, however, this action has been commenced and the law regarding beneficiary deeds is not available to aid the court in resolving this matter. Section 72-6-121(9), MCA, provides in pertinent part: "This section does not invalidate any deed otherwise effective by law to convey title to the interests and estates provided in the deed that is not recorded until after the death of the owner." As the majority holds, the District Court must determine whether the deed was legally delivered.

¶23 But for the provisions in subsection (9), I would hold that the deed was a beneficiary deed, but invalid for failure to be properly recorded prior to Heigis's death.

/S/ MIKE McGRATH